# Illinois Official Reports

## Appellate Court

---

### *People v. Moore*, 2014 IL App (1st) 112592

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MARCELLO MOORE, Defendant-Appellant. |
| District & No. | First District, Third Division<br>Docket Nos. 1-11-2592, 1-12-0313 cons. |
| Filed | May 14, 2014 |
| Rehearing denied | August 20, 2014 |
| Modified upon denial of rehearing | August 27, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's conviction for residential burglary was vacated and a conviction for burglary was entered and the cause was remanded for resentencing, since there was no evidence that at the time of the offense, the owners or occupants resided or in their absence intended within a reasonable time to reside at the premises; furthermore, even though defendant was not properly admonished pursuant to Supreme Court Rule 401 prior to his waiver of counsel, he was not entitled to a new trial, because he only represented himself with respect to a motion to quash and then elected to proceed with counsel, the denial of that motion did not affect the outcome of the trial and the incomplete admonishment did not prejudice defendant, and as a final matter, three erroneously assessed fines were also vacated. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-CR-9235; the Hon. William J. Kunkle, Judge, presiding. |
| Judgment | Affirmed as modified. |

Counsel on
Appeal

Michael J. Pelletier and Brian A. McNeil, both of State Appellate Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Peter D. Fischer and Michael O'Malley, Assistant State's Attorneys, of counsel), for the People.

Panel

PRESIDING JUSTICE HYMAN delivered the judgment of the court, with opinion.
Justices Neville and Pucinski concurred in the judgment and opinion.

## OPINION

¶ 1 After a bench trial, defendant Marcello Moore was found guilty of residential burglary. Moore then filed a *pro se* motion for the reduction of his sentence, which the trial court denied. In this consolidation of defendant's direct and postsentencing appeals, he contends the prosecution presented insufficient evidence at trial to find him guilty beyond a reasonable doubt of residential burglary. He also contends he should receive a new trial because the court did not properly admonish him before he waived counsel, which he did for a single pretrial motion before changing his mind and deciding to be represented again. Lastly, the parties agree that Moore was erroneously assessed certain fines and fees.

¶ 2 We agree that the trial evidence failed to establish beyond a reasonable doubt one of the elements of residential burglary–that an owner or a resident intended to reside at the building at the time of the burglary. Accordingly, we reduce the conviction from residential burglary to burglary. We agree that the trial court improperly admonished Moore regarding waiver of counsel, but under the circumstances, that did not deprive Moore of counsel at a critical stage or prejudice him, as he acted *pro se* for one proceeding, a motion to quash, which his counsel had refused to pursue because of its lack of merit. As to the fines and fees, we modify the judgment.

¶ 3 BACKGROUND

¶ 4 Marcello Moore was charged by information with residential burglary for allegedly entering 6646 South Maryland Avenue, Chicago, on May 5, 2009, without authority and with the intent to commit theft. The arrest report and complaint for preliminary examination gave the wrong address.

¶ 5 Moore requested to represent himself, telling the trial court, "I have been asking [counsel] to file motions in these cases and she is refusing to file them." The court provided Moore with detailed written admonishments on self-representation, listing defendant's rights, the advantages of representation by counsel, and the disadvantages of proceeding without counsel.

The document ended with a waiver of counsel signed by Moore. The document recited, "I have received a copy of the charges against me, and I have read and understood the charging document." But it did not describe the charges, and the next sentence, "I understand the possible penalties in this case," was completed in handwriting with "I have not received copies of anything as of yet," followed by a request for access to a law library and investigator and a particular discovery request. After Moore read and signed this waiver document, the trial court confirmed on the record that Moore understood he had a right to counsel, that he would not have standby counsel, he would not later be able to claim ineffective representation, he and not counsel would be calling and questioning witnesses, and he would have limited ability to investigate his case from jail. The court confirmed that Moore waived his right to counsel voluntarily and had read and signed the waiver. The court granted Moore's motion to proceed *pro se* and counsel's motion to withdraw. In addition, the court ordered that defense copies of discovery be tendered to the State for redaction and then given to Moore.

¶ 6 At a later court date, Moore noted that he had not yet received the discovery, and he filed a *pro se* motion to quash his arrest and suppress evidence. Moore alleged that although arrested at 1:30 p.m. at 6446 South Maryland, records showed that officers were sent at 1:18 p.m. to investigate a report of a residential burglary at 6438 South Maryland so that the "officers were at the wrong location at 1:30 p.m. There was no reason for officers to be at 6446 S. Maryland." He also alleged that, while the police report indicated that the burglar left the building carrying "the blower to the furnace," this item was not recovered or inventoried and, therefore, "does not exist." For both reasons, Moore argued, no probable cause existed to arrest him. He also argued that a security alarm recovered in his postarrest search, later inventoried and identified by the owner as his, should be excluded. In addition, while it had been alleged that a door of the premises was kicked in, Moore pointed out that the State failed to photograph the door or gather evidence (photographs, shoeprints, or the shoes themselves) regarding his shoes. (Two of the photographs in the record on appeal are of a door dented inward and otherwise severely distorted on its lower half close to the locking, as opposed to the hinged, side.)

¶ 7 He also claimed a denial of his right to confront his accuser because the officer who testified at his preliminary hearing was not the officer who saw the burglar leaving the building.

¶ 8 Moore argued *pro se* his motion to quash. He asked police officer Salvador Lara if he was aware that he had been dispatched to 6438 rather than 6446. When he could not so recall, Moore confronted him with the report of the dispatch. The court explained to Moore that the dispatch would have to be introduced into evidence by the witness who sent it. Moore directed the same questions at Officer Stanley Gas, who testified that he did not respond to the initial dispatch but to a later call by Officer Tracy Quarles for assistance at 6446.

¶ 9 Officer Quarles testified that he responded to a reported "burglary in the 6300 block of Maryland," and he went to the back door of the premises (that is, 6446) while other officers went to the front. Once there, Quarles saw Moore fleeing the rear of the building, then drop a furnace blower and run toward the front.

¶ 10 The trial court denied the motion to quash, stating that the officers were outside the building when they saw Moore and had "a right to be there" to investigate the burglary report. The court told Moore to reconsider his decision to proceed *pro se*; Moore did so and accepted the appointment of counsel.

¶ 11    At trial in April 2011, police officer Tracy Quarles testified that he responded to a report of a burglar alarm going off at 6446 South Maryland Avenue. When he arrived, Quarles saw another police car at the front, so he went to the alley or rear, where he saw Moore coming out of the basement door. He said the basement door appeared kicked in. Quarles saw Moore holding a black object that Quarles later learned was a furnace blower or motor. Quarles identified two photographs of the door and one photograph of the blower.

¶ 12    Quarles told Moore to stop. Moore dropped the object and ran toward the front. Meanwhile, Quarles warned by radio of Moore's flight and then learned by radio that Moore had been detained. Quarles went to the front and identified Moore as the man who left the building with the blower. Later, the owner came and in Quarles's presence identified the blower as a part of the furnace.

¶ 13    Officer Stanley Gas testified that, in response to a dispatch regarding a burglar alarm at 6646, he went to the front of the building. When Officer Quarles radioed that Moore was fleeing in his direction, Gas saw Moore running toward him. He detained Moore, who had the keypad of an alarm system in his hand. Gas gave the keypad to either Officer Sena or Lara. He later saw the kicked-in rear basement door, saw a black blower or motor from a furnace near the door, and saw the alarm system with the missing keypad.

¶ 14    Officer Salvador Lara testified that he and Officer Sena arrived shortly before Moore's arrest and that Gas gave Sena a burglar alarm keypad. When the owner came, he identified the keypad as his.

¶ 15    Police detective Steve Hayden testified that he interviewed Moore at the police station following his arrest. Moore told Hayden that he kicked in the back door because he wanted to see the interior in contemplation of buying the building. Once inside, he saw and picked up the broken alarm keypad.

¶ 16    The owner, Andres Schcolnik, testified that he is a real estate developer and owned three of the four units at 6446 South Maryland; specifically, on the first, second, and third floors but not the basement unit. The rear basement entrance was one of the common areas, and the building had an alarm system. When Schcolnik last visited the building before May 5, 2009, he recalled seeing the rear basement door "sealed and in good condition." While he goes to his buildings periodically, he could not recall if he "was there a day before, two days before, or a week back." As of trial, Schcolnik still owned the third-floor unit and had leased it out from November 2009 onward. As of May 2009, that unit was livable, though not completely finished. Schcolnik could not recall when he offered or listed the unit for rent. Schcolnik never gave Moore permission to enter the common areas or remove anything.

¶ 17    On cross-examination, Schcolnik testified that he did not match the recovered keypad to the alarm system and that he had replaced the alarm system so that the recovered keypad may have been from the previous alarm system.

¶ 18    The trial court denied Moore's motion for a directed finding as to burglary, reserving judgment on residential burglary absent law supporting that a dwelling for residential burglary purposes "includes unrented, vacant, remodeling space." The State relied on cases that turned on whether the premises were habitable or the owner or residents intended to reside in the premises within a reasonable time. The State argued Schcolnik's efforts to remodel the third-floor unit for sale or rent satisfied this element and that Schcolnik had testified to the habitability of the third-floor unit. Moore distinguished the State's cases in that Schcolnik had not testified that the premises were habitable but only "might be" so.

¶ 19    The trial court noted the element of intent to reside within a reasonable period and that Schcolnik did not intend to live there and prospective tenants could not have intended to live there at the time of the burglary. The State responded that Schcolnik intended to rent out the third-floor unit and did so by November, a reasonable time from May. After a continuance, the State cited additional case law.

¶ 20    The trial court denied a directed finding on the residential burglary charge, concluding that the legislature intended the residential burglary statute to protect residences without being "dependent on the wholly fortuitous circumstance of whether a structure intended to be used as a residence was actually being used as a residence at the time the burglary was committed."

¶ 21    Moore testified that he was a carpenter and went to the building at about 1 p.m. that day to look at it after seeing an online notice of "HUD listings" of "handyman special[s]" in that neighborhood. He found an alarm keypad "down the street" from the building and kept it to reuse a magnet. He walked around the outside and saw the front door bolted shut and the visible portions of the interior "looked as if it was not being lived in." When he went to the rear, he saw the basement door ajar, but he stood several feet away and could not discern if it was damaged. He saw no debris near the door, did not pick anything up, and never entered. When Officer Quarles confronted him, he had nothing in his hands. Though Quarles told him to stop, he believed that Quarles could not enter the backyard to arrest him due to a high wrought-iron fence. Instead, Moore walked toward the front of the building and was arrested there. He denied that an officer interviewed him after the arrest and denied he admitted to kicking in the door.

¶ 22    Certified copies of two prior convictions for possession of a controlled substance, in 2002 and 2004, were admitted into evidence.

¶ 23    The trial court considered it common practice to put into evidence photographs of stolen property rather than require items be retained in police custody "sometimes for years," so the decision to photograph rather than inventory the furnace blower was not significant. Also not significant was showing Moore had kicked in the backdoor. The court noted that Schcolnik as owner of "a majority of the space in the building *** had control and custody over the common areas including the basement entrance." The court expressly found the officers' testimony to be credible and Moore's testimony to be impeached. Moore was pronounced guilty of residential burglary.

¶ 24    Through counsel, Moore filed a posttrial motion arguing insufficiency of the evidence. Moore also filed a *pro se* posttrial motion arguing ineffective assistance of trial counsel and newly discovered evidence of actual innocence based on the report of the police dispatch referenced in his motion to quash. After arguments, the motions were denied. The court considered the dispatch of the police to the wrong address meaningless because their presence on the street or in the alley outside the building was lawful.

¶ 25    On July 14, 2011, following arguments in aggravation and mitigation, the court sentenced Moore to six years' imprisonment with fines and fees. The record shows Moore's prior convictions: four for possession of a controlled substance, a number for driving on a suspended or revoked license, and one each of domestic battery and criminal trespass to vehicle. His longest sentences were one-year prison terms for violating probation. This direct appeal timely followed.

¶ 26    In August 2011, Moore filed a *pro se* motion for the reduction of his sentence. In October 2011, Moore also filed a postconviction petition as well as another postconviction petition and

a petition for relief from judgment, all *pro se*. On November 4, 2011, Moore withdrew his postconviction petitions on advice of the trial court due to his pending direct appeal. On December 23, 2011, the court denied the motion for reduction of sentence, and an appeal of that issue timely followed.

ANALYSIS

Sufficiency of Evidence for Residential Burglary

Moore contests the sufficiency of the evidence used to find him guilty of residential burglary beyond a reasonable doubt.

A person commits residential burglary when he or she "knowingly and without authority enters or knowingly and without authority remains within the dwelling place of another, or any part thereof, with the intent to commit therein a felony or theft," with a dwelling defined for this purpose as "a house, apartment, mobile home, trailer, or other living quarters in which at the time of the alleged offense the owners or occupants actually reside or in their absence intend within a reasonable period of time to reside." 720 ILCS 5/2-6(b), 19-3(a) (West 2010). Residential burglary expressly includes the offense of burglary, which a person commits when he or she "without authority *** knowingly enters or without authority remains within a building *** or any part thereof, with intent to commit therein a felony or theft." 720 ILCS 5/19-1(a) (West 2010); see 720 ILCS 5/19-3(a) (West 2010).

Whether Moore committed residential burglary involves statutory construction of section 2-6(b) of the Illinois Criminal Code of 1961 (Code) (720 ILCS 5/2-6(b) (West 2008)). In *People v. Roberts*, 2013 IL App (2d) 110524, this court considered the question under section 2-6(b) "where the owners had placed the property for sale but had secured no purchaser and had moved out of the state with no plans to return to the house." *Id.* ¶ 1. We found the language of the statute unambiguous, "For a house to qualify as a dwelling, the owners or occupants must reside in the house at the time of the offense or must intend to do so within a reasonable time. Here, it is undisputed that the owners of the house neither resided there nor intended to do so in the future. The house was unoccupied and no specific individuals intended to reside there." *Id.* ¶ 5.

As to the owner's intent that an eventual purchaser would reside there to render the house a dwelling, "it would be necessary to add language to the statute, expanding the definition of 'dwelling' to include houses or other buildings that *may* have occupants at some unspecified date in the future." (Emphasis in original.) *Id.* ¶ 6. This court declined to do so. Because the owner did not intend to reside there, and "there were no other occupants who could form an intent to take up residence" " 'at the time of the alleged offense,' " we reduced the defendant's conviction to burglary and remanded for resentencing. *Id.* ¶ 7 (quoting 720 ILCS 5/2-6(b) (West 2010)).

In reviewing a challenge to the sufficiency of the evidence, we determine, after taking the evidence in the light most favorable to the prosecution, whether the fact finder could rationally find every element of the offense beyond a reasonable doubt. *People v. Brown*, 2013 IL 114196, ¶ 48. We refrain from substituting our judgment for that of the fact finder on issues involving the weight of evidence or witness credibility because the fact finder resolves conflicts in the testimony, weighs the evidence, and draws reasonable inferences. *Id.* The fact finder need not be satisfied beyond a reasonable doubt as to each link in the chain of circumstances; instead, all the evidence taken together must satisfy the fact finder beyond a

reasonable doubt of the defendant's guilt. *In re Jonathon C.B.*, 2011 IL 107750, ¶ 60. Similarly, the fact finder need not disregard inferences that flow normally from the evidence or seek all possible explanations consistent with innocence and elevate them to reasonable doubt. *Id.* A conviction will be reversed only where the evidence is so unreasonable, improbable, or unsatisfactory that a reasonable doubt of the defendant's guilt remains. *Brown*, 2013 IL 114196, ¶ 48.

¶ 34    This case firmly falls under *Roberts*. While no evidence indicated ownership or occupancy of the basement unit, Schcolnik testified to owning the first- , second- , and third-floor units. No evidence showed that Schcolnik resided there; he described himself as a real estate developer, visited the premises periodically, and referred obliquely to remodeling the units. And, no evidence showed that tenants or buyers intended to occupy Schcolnik's units as of May 2009. In short, no evidence showed that "at the time of the alleged offense the owners or occupants actually reside[d] or in their absence intend[ed] within a reasonable period of time to reside" at the premises. 720 ILCS 5/2-6(b) (West 2010).

¶ 35    We find the logic of *Roberts* highly persuasive. *Roberts* distinguished several cases cited by the State at trial and by the trial court in denying the directed finding motion. *Roberts*, 2013 IL App (2d) 110524, ¶ 9 (citing *People v. McGee*, 398 Ill. App. 3d 789 (2010), *People v. Torres*, 327 Ill. App. 3d 1106 (2002), *People v. Moore*, 206 Ill. App. 3d 769 (1990), and *People v. Sexton*, 118 Ill. App. 3d 998 (1983)). Moreover, *Roberts* found that a case cited extensively by the State, *People v. Silva*, 256 Ill. App. 3d 414 (1993), was based on an earlier statute that "merely required proof that the burglarized premises were 'used or intended for use as a *** residence.' " *Roberts*, 2013 IL App (2d) 110524, ¶ 8 (quoting Ill. Rev. Stat. 1985, ch. 38, ¶ 2-6). Following *Roberts*, we find the evidence insufficient to prove that Moore burglarized the building so that his conviction for residential burglary must be vacated. We find the evidence sufficient to prove that Moore committed a burglary (720 ILCS 5/19-1 (West 2010)). Therefore, we enter a conviction for burglary. Usually, we would remand for resentencing, as residential burglary is a Class 1 felony while burglary is a Class 2 felony. 720 ILCS 5/19-1(b), 19-3(b) (West 2012). But Moore has completed his prison sentence, and on rehearing, he withdrew his prayer for relief seeking resentencing.

¶ 36                                   Admonishments

¶ 37    Moore also contends that the trial court improperly admonished him before his waiver of counsel, and we should grant him a new trial.

¶ 38    Illinois Supreme Court Rule 401 (eff. July 1, 1984) governs a criminal defendant's waiver of counsel. The waiver must be made in open court with a verbatim transcript taken for the record. To be an effective waiver of counsel, the trial court must substantially comply with Rule 401(a). *People v. LeFlore*, 2013 IL App (2d) 100659, ¶ 52 (citing *People v. Campbell*, 224 Ill. 2d 80, 84 (2006)), *appeal allowed*, No. 116799 (Jan. 29, 2014). Substantial compliance with Rule 401(a) is required for an effective waiver of counsel, as its purpose is to help ensure that a defendant's waiver is knowing and voluntary. *People v. Ware*, 407 Ill. App. 3d 315, 341 (2011) (citing *People v. Haynes*, 174 Ill. 2d 204, 236 (1996)). Substantial compliance means a deficiency in the admonishments does not prejudice the defendant, either because the defendant already knows of the omitted information or because the defendant's degree of legal sophistication makes evident his or her awareness of the omitted information. *LeFlore*, 2013 IL App (2d) 100659, ¶ 52; *People v. Black*, 2011 IL App (5th) 080089, ¶ 20.

¶ 39 Generally, a defendant is entitled to a reversal of his or her conviction without making the otherwise-requisite showing that the deprivation caused him prejudice where the complete absence of his or her right to counsel occurs at a critical stage of the case. *People v. Vernón*, 396 Ill. App. 3d 145, 152-53 (2009) (citing *Wright v. Van Patten*, 552 U.S. 120, 124-25 (2008), and *United States v. Cronic*, 466 U.S. 648, 658-59 (1984)). A critical stage exists when substantial rights of a criminal defendant may be affected; that is, when the defendant required aid in coping with legal problems or assistance. *Vernón*, 396 Ill. App. 3d at 153-54.

¶ 40 Moore had counsel throughout his pretrial proceedings until he sought to represent himself when counsel would not file motions he desired. After the waiver, Moore represented himself on a *pro se* motion to quash, and when the court denied that motion and suggested Moore reconsider his decision to act *pro se*, he agreed. Counsel represented Moore from then on, including at trial.

¶ 41 Our initial inquiry concerns Moore's waiver's compliance with Rule 401. We agree with Moore that it did not. Before Moore waived his right to counsel, the trial court did not admonish Moore in open court of the charges or sentencing he faced. Even accepting at face value the statement in the written waiver that Moore received a copy of the charge, the record contains nothing to indicate that the trial court admonished Moore either orally or in writing on the minimum and maximum sentences for residential burglary. Nor does the record reflect any mention of the sentencing range before the waiver of counsel, and we have no reason to believe from defendant's criminal history that he was aware of that sentencing range. Thus, the trial court cannot be said to have substantially complied with Rule 401.

¶ 42 Moore contends that our analysis should end here, that this conclusion dictates without exception a remand for a new trial. Moore relies on the rule noted above that a prejudice analysis cannot be conducted once the waiver has been determined to be fatally incomplete or erroneous. Moore acknowledges the principle behind this rule, which is articulated in *United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006), "It is impossible to know what different choices the rejected counsel would have made, and then to quantify the impact of those different choices on the outcome of the proceedings" because a court would have to "speculate upon what effect those different choices of different intangibles might have had." *Id.* at 150-51. In other words, regarding a critical stage, generally, the principle behind this rule is sound–regarding a critical stage, generally, it is impossible to determine how the outcome of proceedings would have been different with counsel compared to the *pro se* actuality because no stage of the proceedings stands alone but instead earlier stages influence not just what follows but also that which is well removed. But Moore represented himself for only one proceeding, an unsuccessful *pro se* motion to quash. If that motion had no arguable merit and is frivolous as a matter of law, then we can reliably determine that denial of his motion did not affect the outcome of the later proceedings, including trial. "Of course, the Sixth Amendment does not require that counsel do what is impossible or unethical." *Cronic*, 466 U.S. at 656 n.19. Stated another way, the filing and presentation of a frivolous motion cannot be termed a critical stage because a defendant has no right to present a frivolous motion and, likewise, has no right to require the aid of counsel to do so.

¶ 43 Contrary to Moore's rehearing contention that we have disregarded United States Supreme Court precedent and contradicted our own recitation of the law regarding prejudice, we conclude that the principles set forth by the Supreme Court as underlying that law support a conclusion that we may conduct a prejudice analysis under the limited circumstances

- 8 -

presented here. While the Supreme Court renounced speculating on the effect of one choice on later proceedings, we need to not speculate as Moore's self-representation was for one proceeding only so long as that proceeding was obviously without merit.

¶ 44 We find Moore's motion to quash to be without merit as a matter of law. Moore waived counsel and filed his *pro se* motion to quash because counsel refused to file the motion. We may reasonably infer that Moore had the benefit of counsel in determining whether to file a nonfrivolous motion to quash and chose to disregard counsel's advice. This is corroborated by the same counsel's reappointment after the *pro se* motion to quash failed and that his counsel did not seek to supplement the motion to quash or to reconsider its denial. As to the substance of the motion filed, assuming the officers had been dispatched to another address as Moore alleged, nothing would prohibit the officers from being in the alley to see Moore leaving the building, as Officer Quarles testified. Moore argues on rehearing that "while there may be reason to suspect someone of committing a crime where he emerges from a building to which the officers have been summoned to investigate a burglary, there is no reason to suspend a person who, like Moore, came out of a building that was only *near* the subject of a burglary investigation." (Emphasis in original.) But both the hearing a trial, testimony established that an officer saw Moore near the rear basement door of the building, which appeared to have been kicked in, holding a furnace blower. That testimony was corroborated by other testimony and photographic evidence that the door was dented and damaged as if kicked in. When the officer told Moore to stop, having reasonable suspicion that a crime was being committed from the damaged door and the blower, Moore instead fled so that the officer's suspicion blossomed into probable cause. Similarly, that the furnace blower was not recovered and inventoried, as Moore argued, does not vitiate finding probable cause for his arrest. In short, even if his factual assertions were proven, defendant's arrest would still be proper. Under these circumstances, Moore was neither deprived of counsel at a critical stage nor did he suffer prejudice from the incomplete Rule 401 admonishments preceding his waiver of counsel.

¶ 45 Fines and Fees

¶ 46 Lastly, Moore contends, and the State agrees, that three of his fines or fees were erroneously assessed and must be vacated. While we are remanding for resentencing, we note for guidance of the trial court that the parties are correct. The $200 DNA analysis fee (730 ILCS 5/5-4-3(j) (West 2010)) should not have been assessed because Moore provided a DNA sample following an earlier felony conviction subject to this fee; the fee is improper. *People v. Marshall*, 242 Ill. 2d 285 (2011). Moore also was assessed a $5 electronic citation fee (705 ILCS 105/27.3e (West 2010)) that does not apply to felonies. And, Moore was assessed a $15 State Police operations fee (705 ILCS 105/27.3a(1.5) (West 2010)) that took effect on July 13, 2010. But we have held this fee is to be a fine (*People v. Wynn*, 2013 IL App (2d) 120575, ¶ 13), and fines cannot be applied retroactively under the ban on *ex post facto* legislation.

¶ 47 Accordingly, we modify defendant's conviction to burglary and vacate the DNA analysis fee, the electronic citation fee, and the State Police operations fine. Because Moore has completed his prison sentence though not his term of mandatory supervised release, we need not remand. The judgment of the circuit court is otherwise affirmed.

¶ 48 Affirmed as modified.