# Illinois Official Reports

## Appellate Court

---

### *People v. Murphy*, 2017 IL App (1st) 142092

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DARNELL MURPHY, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-14-2092 |
| Filed<br>Modified upon<br>denial of rehearing | March 14, 2017<br><br>April 11, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-CR-8603; the Hon. Joseph M. Claps, Judge, presiding. |
| Judgment | Affirmed; fines and fees order corrected. |
| Counsel on Appeal | Michael J. Pelletier, Patricia Mysza, and Christofer R. Bendik, of State Appellate Defender's Office, for appellant.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg and Mari R. Hatzenbuehler, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE MASON delivered the judgment of the court, with opinion.<br>Justice Pierce concurred in the judgment and opinion.<br>Presiding Justice Hyman concurred in part and dissented in part, with opinion. |

# OPINION

¶ 1 Following a bench trial, defendant, Darnell Murphy, was found guilty of burglary. He was sentenced, because of his criminal background, to a Class X sentence of eight years in prison. On appeal, Murphy contends that he was not proven guilty beyond a reasonable doubt because the State failed to establish that he did not have permission to be inside the building or that he intended to commit a theft. He also contests the imposition of certain fines and fees. We affirm and correct the fines and fees order.

¶ 2 Lakisha Wilson is an employee of the University of Illinois at Chicago (UIC) and works in the telephone operating department located at 1140 S. Paulina. The building houses the university's telecommunications equipment and is accessible only by university employees using either a key card or a key; students cannot walk through the building.

¶ 3 On Sunday, April 15, 2012, Wilson arrived at work around 6:00 a.m. Only two other UIC employees were in the building that day. Wilson used her key card to gain access and went to her office in the basement. From her desk, Wilson could see a video security monitor that displayed activity in other areas of the building. Around 7:45 a.m., Wilson looked up and saw, on the monitor, an individual later identified as Murphy in the basement hallway of the building. Wilson could tell that Murphy was not a UIC employee. The monitor showed Murphy holding a pole in his hand, "grabbing on the doorknobs trying to see if they were open," and "looking in the equipment in our department." Wilson observed Murphy looking in boxes in the hallway and moving boxes.

¶ 4 Wilson, who was nervous and "couldn't get [her] words correct," asked a coworker to call the UIC police while Wilson kept her "eye on the monitor to watch" Murphy. Murphy eventually disappeared from view on the monitor, and a few minutes later, Wilson saw Murphy "some inches" from her, on the other side of a divider in the cubicle area. Wilson told Murphy to leave and asked him what he was "doing down here." Murphy responded that he was "just looking."

¶ 5 Other video surveillance depicted Murphy in the garage area of the building looking into the windows of vehicles parked there.

¶ 6 UIC police officer Bryan Muhammad responded to a call of a suspicious person. He used his key card to enter the building and walked to the basement. There, he saw Murphy, who was "[c]learly" not a UIC employee. As Murphy walked toward him, Muhammad told him to stop and then took him into custody. When Muhammad asked Murphy why he was in the basement, he responded, "it's cool, bro, I'm just looking for something." Muhammad recovered a white box containing "cable wire" that was located near an elevator that Wilson had observed Murphy moving.

¶ 7 In finding Murphy guilty of burglary, the trial court stated that

"the most persuasive of the evidence is that actual video, observing the actions of Mr. Murphy. There is absolutely nothing in the video that suggests he was lost or he was looking for a way to get out.

What is clear is this was a building not for students but for workers and that you need a key card to get in the building. There is nothing in the evidence that can tell me how he got into the building, but it's clear from what is observed on the video that he was looking for stuff."

The court then sentenced Murphy, because of his criminal background, to a Class X sentence of eight years in prison.

¶ 8    On appeal, Murphy contends that he was not proven guilty of burglary beyond a reasonable doubt because the State failed to prove that he lacked authority to enter the 1140 S. Paulina building and that he intended to commit a theft inside the building.

¶ 9    When reviewing a challenge to the sufficiency of the evidence, the relevant question is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Brown*, 2013 IL 114196, ¶ 48. It is the responsibility of the trier of fact to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from the facts. *People v. Bradford*, 2016 IL 118674, ¶ 12; *People v. Valladares*, 2013 IL App (1st) 112010, ¶ 112 ("As the trier of fact, the trial court is in a superior position to assess the credibility of witnesses, resolve any inconsistencies, determine the weight to be given the testimony, as well as any reasonable inferences that can be drawn."). Accordingly, a reviewing court will not substitute its judgment for that of the fact finder on questions involving the weight of the evidence or the credibility of the witnesses. *Id*. This court will reverse a defendant's conviction only where the evidence is so unreasonable, improbable, or unsatisfactory that a reasonable doubt regarding defendant's guilt remains. *Id*.

¶ 10    To sustain a conviction for burglary, the State must prove beyond a reasonable doubt that defendant, without authority, knowingly entered or remained within a building with intent to commit therein a felony or theft. 720 ILCS 5/19-1(a) (West 2010). Burglary is accomplished the moment an unauthorized entry with the requisite intent occurs regardless of whether a subsequent felony or theft was actually committed. *People v. Poe*, 385 Ill. App. 3d 763, 766 (2008). Absent direct evidence, intent must be proven circumstantially, and a conviction may be sustained on circumstantial evidence alone. *People v. Johnson*, 28 Ill. 2d 441, 443 (1963). Intent is usually proven through circumstantial evidence, that is, inferences based upon defendant's conduct. *People v. Ybarra*, 156 Ill. App. 3d 996, 1002-03 (1987). "Like other inferences, this one is grounded in human experience, which justifies the assumption that the unlawful entry was not purposeless, and, in the absence of other proof, indicates theft as the most likely purpose." *Johnson*, 28 Ill. 2d at 443.

¶ 11    Viewing the evidence in the light most favorable to the State, as we must (*Brown*, 2013 IL 114196, ¶ 48), there was sufficient evidence to find Murphy guilty of burglary beyond a reasonable doubt when the evidence at trial established that (1) entry into the 1140 S. Paulina building was controlled by a key or key card and limited to UIC employees, (2) two UIC employees testified that Murphy was not employed by UIC, (3) Murphy was in the building on a Sunday morning when only three employees were in the building, and (4) Murphy was observed moving boxes and attempting to open doors. The trial court's inference that Murphy's entry into the building on a Sunday morning showed his intent to commit a theft therein is completely rational. See *Johnson*, 28 Ill. 2d at 443. A trier of fact is not required to disregard the inferences that normally flow from the evidence or to seek out all possible explanations consistent with a defendant's innocence and elevate them to reasonable doubt. See *In re Jonathon C.B.*, 2011 IL 107750, ¶ 60; *People v. Moore*, 2014 IL App (1st) 112592, ¶ 33 ("[T]he fact finder need not disregard inferences that flow normally from the evidence or seek all possible explanations consistent with innocence and elevate them to reasonable doubt."). Ultimately, viewing the evidence in the light most favorable to the State, we find

that the circumstantial evidence presented at trial was sufficient to find Murphy guilty of burglary. *Brown*, 2013 IL 114196, ¶ 48.

¶ 12    But Murphy contends that the fact that the "owner/manager" of the building did not testify at trial that Murphy did not have authority to enter the building means that the State failed to establish that he "lacked authority" to enter the building. However, two UIC employees testified that the building was restricted to UIC employees, that entry to the building was via key card or key, and that Murphy was not a UIC employee. Further, Wilson's coworker, another of the employees present that morning, called the UIC police at Wilson's request, so it is safe to assume that coworker did not give Murphy permission to enter the building. Murphy does not cite any authority that requires the State to positively disprove the existence of any other person who could possibly have permitted Murphy to enter the premises. Indeed, Murphy's very presence in a building that was inaccessible to the public and limited to UIC employees with key cards or keys is sufficient to support the reasonable inference that he entered the building without authority. It was for the trial court, as the trier of fact, to determine what inferences to draw from the facts presented at trial; this court will not substitute its judgment for that of the trial court on this issue. See *Bradford*, 2016 IL 118674, ¶ 12.

¶ 13    To the extent that Murphy contends that the State failed to establish that he had the intent to commit a theft because he did not try to conceal his presence, did not "exhibit a guilty conscience" when approached by a UIC policeman, and did not actually take anything, we disagree. Initially, we note that a burglary is accomplished the moment an unauthorized entry with the requisite intent occurs even if no subsequent felony or theft is committed; there is no requirement that a defendant successfully complete the theft. See *Poe*, 385 Ill. App. 3d at 766. Therefore, the fact Murphy had not removed anything from the building does not defeat the circumstantial evidence of Murphy's intent to commit a theft inside the building when he was observed testing door knobs to see whether doors were unlocked and examining and moving boxes. We also reject Murphy's argument that his failure to run from the UIC police officer reflects a lack of a consciousness of guilt defeating the inference that he intended to commit a theft. While flight from law enforcement has often been found to reflect consciousness of guilt (see, *e.g.*, *People v. Hart*, 214 Ill. 2d 490, 518-19 (2005)), it does not follow that the opposite is necessarily true. A trier of fact must still look at the totality of the circumstances, and in this case, an attempt to flee from a basement hallway would likely have been futile. Most importantly, it is not this court's job to reweigh the evidence presented at trial, and we decline Murphy's invitation to do so. See *Bradford*, 2016 IL 118674, ¶ 12.

¶ 14    Our colleague concludes that the State did not meet its burden of proof. But given that the majority of the elements of burglary were established by video evidence of Murphy's conduct in looking in car windows, trying door handles, and examining and moving boxes in a UIC building accessible only by employees possessing a key or a key card on a Sunday morning when only three UIC employees were present, a stronger case is hard to imagine. The direct evidence supports the conclusion that two of the three employees present that morning did not give Murphy permission to enter the building: Wilson testified that she did not allow him to enter, and her coworker called UIC police to report an intruder. And while it is, we suppose, possible that the third employee or some unidentified person (who was not working that day but possessed a key or a key card) happened to allow Murphy into the building "just to look for something," that was neither a reasonable inference nor one the trial

- 4 -

court was required to indulge. See *People v. Moore*, 2014 IL App (1st) 112592, ¶ 33 ("[T]he fact finder need not disregard inferences that flow normally from the evidence or seek all possible explanations consistent with innocence and elevate them to reasonable doubt."). And it would have been logical that, had Murphy, in fact, been granted permission to enter the building by someone, he would have so indicated when confronted by a security officer instead of stating that he was "just looking for something," which, of course, is what burglars do. Our supreme court long ago rejected the notion that the State is required to prove a defendant guilty beyond *all* doubt. *People v. Madej*, 106 Ill. 2d 201, 218 (1985) ("[T]he State's burden of proof at trial is to prove guilt beyond a reasonable doubt, not beyond any possibility of a doubt.").

¶ 15    Ultimately, this court cannot say that no rational trier of fact could have found Murphy guilty of burglary when the evidence at trial established (i) his presence in a restricted access building on a Sunday morning and (ii) his conduct in attempting to open doors and examining and moving boxes. *Brown*, 2013 IL 114196, ¶ 48. This court will reverse a defendant's conviction only where the evidence is so unreasonable or unsatisfactory that a reasonable doubt regarding his guilt remains (*id.*); this is not one of those cases. Therefore, we affirm Murphy's conviction for burglary.

¶ 16    Murphy next contests the imposition of certain fines and fees. Murphy has forfeited review of this claim because he did not challenge the fines and fees order in a postsentencing motion. See, *e.g.*, *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). In his brief, citing *People v. Lewis*, 234 Ill. 2d 32 (2009), Murphy invokes plain error as a basis for review of this unpreserved error. *Lewis* is not directly on point because that case involved a fine, the amount of which was measured by the street value of drugs possessed by defendant, and the trial court assessed the fine without hearing any evidence as to the value. *Id.* at 46. In contrast, the fine Murphy challenges is not evidence-based but is fixed and automatic in certain cases. But the State has not argued against plain error review and so has itself forfeited that argument. See *People v. Williams*, 193 Ill. 2d 306, 347-48 (2000); Ill. S. Ct. R. 341(h)(7) (eff. Jan. 1, 2016) ("[p]oints not argued are waived"). Therefore, under the circumstances of this case, we will address this issue on the merits. We review the imposition of fines and fees *de novo*. *People v. Price*, 375 Ill. App. 3d 684, 697 (2007).

¶ 17    Murphy first contends, and the State concedes, that the $25 Violent Crimes Victims Assistance Fund (VCVA) assessment should be vacated because he was assessed other fines. See 725 ILCS 240/10(c)(1) (West 2010) (the $25 assessment is imposed only when "no other fine is imposed"). We therefore vacate the $25 VCVA assessment.

¶ 18    Murphy next contends that the imposition of the $2 Public Defender Records and Automation Fee (55 ILCS 5/3-4012 (West 2012)), and the $2 State's Attorney Record Automation Fee (55 ILCS 5/4-2002.1(c) (West 2012)), violates the prohibition on *ex post facto* laws, as both assessments were enacted in 2012, after Murphy committed the offense for which he was convicted. See Pub. Act 97-673, § 5 (eff. June 1, 2012).

¶ 19    We note that this court has previously held that these charges are fees, as opposed to fines, and thus these charges are not subject to being offset by Murphy's presentence custody credit. See *People v. Warren*, 2016 IL App (4th) 120721-B, ¶ 115 (finding the State's Attorney charge to be a fee because it is compensatory in nature and not punitive); *People v. Bowen*, 2015 IL App (1st) 132046, ¶¶ 62-65 (finding "no reason to distinguish between the two statutes" given their nearly identical language and concluding that those charges are

intended to reimburse those offices for expenses); see also *People v. Maxey*, 2016 IL App (1st) 130698, ¶ 144; *People v. Green*, 2016 IL App (1st) 134011, ¶ 46; *People v. Reed*, 2016 IL App (1st) 140498, ¶¶ 16-17.

¶ 20    Although the opposite result was reached in *People v. Camacho*, 2016 IL App (1st) 140604, ¶¶ 52-56, which found that the charges do not compensate the State for costs imposed in prosecuting any particular defendant and therefore are not fees, we agree with the analysis in *Warren* and the numerous cases cited above that when a charge does not include a punitive aspect, it is a fee, not a fine.

¶ 21    Given our determination that the State's Attorney and public defender charges are fees, they do not implicate *ex post facto* principles. See *People v. Taylor*, 2016 IL App (1st) 141251, ¶ 29. See also *People v. Rogers*, 2014 IL App (4th) 121088, ¶ 30 (" 'The prohibition against *ex post facto* laws applies only to laws that are punitive.' " (quoting *People v. Dalton*, 406 Ill. App. 3d 158, 163 (2010))). We therefore conclude that the *ex post facto* doctrine does not prohibit the assessment of these charges.

¶ 22    Accordingly, pursuant to Illinois Supreme Court Rule 615(b)(1), we order the clerk of the circuit court to correct the fines and fees order by vacating the $25 VCVA assessment for a new total due of $429. We affirm the judgment of the circuit court of Cook County in all other aspects.

¶ 23    Affirmed; fines and fees order corrected.

¶ 24    PRESIDING JUSTICE HYMAN, concurring in part and dissenting in part.

¶ 25    I write separately to dissent from the majority's decision to affirm Murphy's conviction. Murphy contends he was not proven guilty of burglary beyond a reasonable doubt because the State failed to prove he (i) lacked authority to enter the 1140 South Paulina building and (ii) intended to commit theft. I agree with Murphy's contentions and would reverse.

¶ 26    In reviewing a challenge to the sufficiency of the evidence, we ask whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Brown*, 2013 IL 114196, ¶ 48. We may not substitute our judgment for that of the trier of fact on questions involving the weight of the evidence or the credibility of the witnesses. *People v. Bradford*, 2016 IL 118674, ¶ 12. We will reverse a conviction only where the evidence is so unreasonable, improbable, or unsatisfactory that a reasonable doubt exists about guilt. *Id*.

¶ 27    To sustain a conviction for burglary, the State must prove beyond a reasonable doubt that the defendant, without authority, knowingly entered or remained within a building with intent to commit a theft or felony. 720 ILCS 5/19-1(a) (West 2010). Burglary is accomplished the moment an unauthorized entry with the requisite intent occurs, regardless of the actual commission of a theft or felony. *People v. Poe*, 385 Ill. App. 3d 763, 766 (2008). Absent direct evidence, intent must be proven circumstantially, and a conviction may be sustained on circumstantial evidence alone. *People v. Johnson*, 28 Ill. 2d 441, 443 (1963).

¶ 28    When viewed in the light most favorable to the State, the evidence does not prove guilt beyond a reasonable doubt. Generally, only UIC employees with a key or key card have access. The majority concludes that the trial court properly inferred Murphy's entry must have been improper because he was in the building and was not an employee. The majority

also concludes that it is "completely rational" to infer an intent to commit theft based on Murphy's presence on a Sunday morning and his unexplained behavior in looking in car windows, checking doorknobs and moving boxes. I disagree with both conclusions—the State failed to prove that Murphy's entry was unauthorized and failed to prove the intent element of theft.

¶ 29    The State presented no evidence of a forced entry, and Murphy was not carrying burglary tools, leaving the trial court to indulge in improper speculation and conjecture on how Murphy got into the building. Hypothetical scenarios, such as he might have followed an authorized employee through a locked door or entered by way of an unlocked door, lack evidentiary support. More importantly, there is certainly no evidence from which to conclude that either method of entry was knowingly unauthorized or made with the intent to commit theft. To repeat, Murphy was not carrying tools or the proceeds of theft. And when confronted by security, he did not attempt to flee and made the innocuous statement "just looking for something" in response to being asked why he was there. The majority contends this "is what burglars do" and that if Murphy had permission to be in the building, he would have said so. While the majority says they do not understand my reasoning, I would suggest the inferences by the majority defy understanding. It is equally (and maybe more) plausible that if Murphy entered the building intending to commit a burglary he would have lied and claimed he had authority to be there or, as noted, would have tried to flee.

¶ 30    While a fact finder "need not disregard inferences that flow normally from the evidence" (*People v. Moore*, 2014 IL App (1st) 112592, ¶ 33), the evidence presented at trial does not support the inference that Murphy entered the building with the intent of committing burglary. Although the majority suggests that Murphy's "remaining" in the building coupled with his conduct—trying door handles and moving boxes—is enough to sustain his conviction, this does not establish intent to commit burglary any more than his initial entry into the building does. One is predisposed to think Murphy's conduct suggests an intent to commit burglary only if one presupposes Murphy is a burglar. But moving boxes around and checking door handles is equally compatible with what Murphy told the UIC employee he was doing—looking for something. Both the trial court and the reviewing court must rely on the evidence and may not rely on an assessment of the defendant's character or preconceived notions to support a conviction. *People v. Ojeda*, 110 Ill. App. 2d 480, 485 (1969) (it is fundamental that a judge resolve disputed questions of fact only after hearing all of the evidence with an open mind and not with a preconceived attitude).

¶ 31    As the majority notes, our supreme court has held that the State is not required to prove a defendant guilty beyond all reasonable doubt. *People v. Madej*, 106 Ill. 2d 201, 208 (1985). But the court also has held that the State may not leave an essential element of a crime to conjecture or assumption. See *People v. Laubscher*, 183 Ill. 2d 330, 335-36 (1998). In *Laubscher*, the defendant was found guilty of, among other things, unlawful use of weapons following a dispute on the lawn of the apartment building where he lived. The appellate court reversed the unlawful use of weapons conviction finding the State failed to prove that defendant was not "on his land" at the time he was observed in possession of a weapon, as provided in the exceptions to the unlawful use of weapons statute. On appeal to the supreme court, the State argued that it had presented sufficient evidence to show that, at the time he was observed with a weapon, he was not on his land.

¶ 32    Our supreme court noted that the only evidence offered by the State regarding defendant's connection with the property was that he lived in the apartment building; there was no proof of his interest in his unit or the surrounding land or as to the ownership of the property in general. *Id.* at 336. The supreme court agreed with the appellate court that although it was not unreasonable for the trial court to assume that defendant had no ownership interest in the premises, permitting such an inference absent an evidentiary basis effectively shifted the burden to the defendant to prove that he was actually on his land or fell within one of the other statutory exceptions. *Id.*

¶ 33    *People v. Smith*, 2014 IL App (1st) 123094, is also instructive. In *Smith*, this court found that evidence of the defendant's possession of stolen auto parts near an abandoned auto parts store that had missing items was insufficient to support his burglary conviction. The State presented no evidence connecting items in defendant's possession to the missing items, and there was no evidence that defendant was ever inside the store. Therefore, any conclusion that the defendant stole the items in his possession from within the store would be based on conjecture rather than inference. *Id.* ¶ 15.

¶ 34    As in *Laubscher* and *Smith*, the trial court was required to rely on speculation and conjecture. The only evidence offered by the State to establish that Murphy knowingly entered the building without authorization was his presence in the building and testimony that UIC employees accessed the building with a key or a key card. This evidence, without more, requires the fact finder to speculate about how Murphy got in and is not sufficient to show that his entry was knowingly unauthorized or with the intent to commit a theft.

¶ 35    Although a conviction for burglary may be based on circumstantial evidence (see *Johnson*, 28 Ill. 2d at 443), that circumstantial evidence still must satisfy the reasonable doubt standard, which protects defendants from wrongful convictions. Here, no rational trier of fact could have found an essential element of the crime beyond a reasonable doubt. See *Brown*, 2013 IL 114196, ¶ 48. Taking the evidence in the light most favorable to the State, what little evidence the State presented amounts to an unexplained entry combined with unexplained activity inside a building. The State presented too little evidence to establish a criminal act beyond a reasonable doubt. Therefore, I would reverse Murphy's conviction.

¶ 36    As to the majority's decision to correct the fines and fees order, I concur.