2026 IL App (1st) 230965-U

No. 1-23-0965

Order filed April 30, 2026

FOURTH DIVISION

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 21 CR 4972 |
| | ) | |
| ANTWONE DUCKINS, | ) | Honorable |
| | ) | Ursula Walowski, |
| Defendant-Appellant. | ) | Judge presiding. |

_____

JUSTICE LYLE delivered the judgment of the court.
Presiding Justice Navarro and Justice Ocasio concurred in the judgment.

**ORDER**

¶ 1     *Held*:   We affirm defendant's convictions for criminal sexual assault over his contention there was insufficient evidence that he was the victim's family member.

¶ 2     Following a bench trial, defendant-appellant, Antwone Duckins, was found guilty of three counts of criminal sexual assault and sentenced to three consecutive five-year prison terms. On appeal, Mr. Duckins contends there was insufficient evidence that he was a family member of the

victim as defined by statute for purposes of two of the counts for criminal sexual assault. We affirm.

¶ 3                                    BACKGROUND

¶ 4      The State charged Mr. Duckins with four counts of predatory criminal sexual assault of a child, four counts of criminal sexual assault, and one count of aggravated criminal sexual abuse against A.H. occurring between October 20, 2010, and December 31, 2014.

¶ 5      Relevant here, counts VI and VII for criminal sexual assault alleged contact between Mr. Duckins' penis and A.H.'s mouth (count VI) and contact between Mr. Duckins' mouth and A.H.'s sex organ (count VII) when A.H. was under 18 years old and Mr. Duckins was a family member, namely, her stepfather, and resided in the same household for at least six months. 720 ILCS 5/11-1.20(a)(3) (West 2020).

¶ 6      Prior to trial, the State filed a motion to allow other-crimes evidence pursuant to section 115-7.3 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-7.3 (West 2020)). The motion alleged that Mr. Duckins was convicted of the aggravated criminal sexual assault of A.H.'s sister, An.H., in case number 16 CR 6257 and was sentenced to six years in prison. Following argument, the trial court granted the motion. The State later nol-prossed one count of predatory criminal sexual assault of a child.

¶ 7      At trial, A.H. testified that she was born on October 20, 1997. Mr. Duckins began sexually abusing A.H. when she was 13 years old, and the abuse resulted in A.H.'s pregnancy and subsequent birth of a daughter on June 23, 2015. A.H. was 18 years old when she gave birth and, at that time, lived at an address on North Bell Avenue with her mother, An.H., and Mr. Duckins.

¶ 8      A.H. knew Mr. Duckins as her mother's boyfriend. Mr. Duckins moved into the North Bell residence after dating her mother for a "couple" of years. A.H. was 10 or 11 years old when Mr.

Duckins moved in. She later testified that she was approximately 12 years old and still in elementary school when Mr. Duckins moved in. At one point, her mother and Mr. Duckins married in Las Vegas.

¶ 9     When A.H. was 12 years old, Mr. Duckins started sexually abusing her a couple times a month until she was around 16 or 17 years old and became pregnant with his child. The abuse always occurred when they were alone and occurred in the North Bell residence. When A.H. was 13 years old and not in high school, Mr. Duckins penetrated her orally with his penis in the kitchen of the North Bell residence.

¶ 10     Mr. Duckins lived at the North Bell residence when A.H.'s daughter was born. When A.H. was in labor, he wanted to remain when others were asked to leave. When A.H.'s daughter was weeks old, during a conversation at the North Bell residence, Mr. Duckins stated, " 'Let me hold my baby.' " When A.H. refused, he stated, " 'You don't got to be selfish with my baby.' "

¶ 11     Between the time that A.H. was 13 years old and Mr. Duckins' arrest, while in the North Bell residence, Mr. Duckins placed his mouth on her vagina multiple times. After Mr. Duckins was arrested for offenses against An.H., A.H. told Shantell Harris about Mr. Duckins' actions and filed a police report. Prior to speaking to Ms. Harris in 2020, A.H. had not disclosed the identity of her daughter's father. From the first time that Mr. Duckins first sexually abused her until he was arrested for acts against An.H., A.H. did not know him to live anywhere else. She referred to Mr. Duckins as her mother's boyfriend. However, Mr. Duckins referred to himself as her stepfather.

¶ 12     A.H. did not remember telling an assistant State's attorney (ASA) during a December 5, 2022, conversation that she was approximately 15 years old the first time she performed oral sex on Mr. Duckins. A.H. did not disclose the sexual contact when it was happening. A.H. was aware that Duckins was arrested in 2016, but was not present when An.H. made allegations about Mr.

Duckins to their mother. During redirect, A.H. explained that she remained silent because her mother and An.H. were "going through enough."

¶ 13    At the close of A.H.'s testimony, the court stated that the term " 'living with' " was a conclusion, not a fact, and there must be "an explanation" as to what a person means by using that term. A.H. then testified that when Mr. Duckins moved into the North Bell residence, he was present every day "leaving off for work," his clothes were there, he bathed there, and he slept there. His name was on the mailbox. Mr. Duckins stopped living at the North Bell residence the day that An.H. "told."

¶ 14    Chicago police detective Emily Rodriguez Merida testified that she spoke to A.H. on December 8, 2021, and collected buccal swabs from A.H. and her daughter. Detective Rodriguez Merida and fellow detectives went to Mr. Duckins' correctional institution and executed a search warrant for Mr. Duckins' buccal swab on March 30, 2021. All three swabs were inventoried and sent for testing. In April, she spoke to Mr. Duckins at a police station.

¶ 15    An.H., A.H.'s younger sister, testified that she was born on July 17, 2000. An.H. first met Mr. Duckins as her mother's friend, and he visited the North Bell residence without spending the night. Mr. Duckins began to spend the night, and then moved "his stuff" in when An.H. was 10 years old. Mr. Duckins' clothes were at the North Bell residence and he slept there most, if not all nights. An.H. referred to Mr. Duckins as her stepdad and he referred to her as his stepdaughter. When An.H. was 11 years old, he had inappropriate sexual contact with her at the North Bell residence.

¶ 16    The State entered into evidence a certified copy of a "vital record of dissolution," filed on July 20, 2022, which stated, that Mr. Duckins and A.H.'s mother were married on June 29, 2013. The State then presented a stipulation and testimony that DNA profiles were identified in the

buccal swabs taken from A.H., her daughter, and Mr. Duckins, and that there was a 99.99% probability that Mr. Duckins was the biological father of A.H.'s daughter as compared to an untested-unrelated male. The State also presented a certified copy of Mr. Duckins' conviction for aggravated criminal sexual assault in case number 16 CR 625701.

¶ 17 At the close of the State's case, Mr. Duckins' moved for a directed finding. After argument, the court granted the motion as to count IV for predatory criminal sexual assault of a child, count VIII for criminal sexual assault, and count IX for aggravated criminal sexual abuse.

¶ 18 Mr. Duckins then entered a stipulation that A.H. told a detective and an ASA that she was 15 when oral sex with him began. The defense next asked the State to stipulate that during the December 8, 2020, conversation with Ms. Harris, A.H. stated that sexual contact with Mr. Duckins occurred a "couple of times," and the State agreed to the stipulation.

¶ 19 Mr. Duckins testified that he had an apartment in 2010, for which the lease ended on January 1, 2011. Then, he moved into the North Bell residence. Mr. Duckins denied engaging in sexual contact with A.H. when she was 12. When he met A.H. in January 2011, she was 13 years old. Mr. Duckins denied having A.H. perform oral sex on him when she was 15. The "only time" Mr. Duckins and A.H. had "any interaction like that" was in 2015.

¶ 20 During cross-examination, Mr. Duckins testified that he was born on July 1, 1981, and had five children, including the daughter he shared with A.H. In 2015, when Mr. Duckins had sexual contact with A.H., he was legally married to A.H.'s mother, lived at the North Bell residence, and A.H., who was 17, about to turn 18, was his stepdaughter. Mr. Duckins claimed that the sexual contact only occurred once and was consensual, which led to the birth of their daughter. He denied engaging in oral sex with A.H. and did not touch her vagina with his hands.

¶ 21    Mr. Duckins was arrested on March 29, 2016, for a charge relating to An.H. and spoke to a detective. During the conversation, he stated that he lived at the North Bell residence for six years. At trial, however, Mr. Duckins stated that he was mistaken. He also denied telling Detective Rodriguez Merida, during the conversation at his correctional institution, that he had lived with A.H.'s mother at the North Bell residence for approximately six years. Rather, he asserted that he stated that he and A.H.'s mother "started *** talking again" in December 2010. Mr. Duckins acknowledged pleading guilty to the aggravated criminal sexual assault of An.H., but asserted his innocence.

¶ 22    Following argument, the trial court found Mr. Duckins guilty of three counts of criminal sexual assault (counts V, VI, VII), and not guilty of the remaining charges. The court did not believe Mr. Duckins' "convenient admission" to one instance of sexual intercourse with A.H.

¶ 23    Mr. Duckins moved for a new trial, alleging that A.H. testified vaguely about the time periods of sexual contact. The trial court denied the motion. Following argument, the court imposed three consecutive five-year prison terms. Mr. Duckins filed a motion to reconsider his sentence, which the court denied. On October 4, 2023, Mr. Duckins filed a motion for leave to file a late notice of appeal, which this court granted.

¶ 24                                      ANALYSIS

¶ 25    We note that we have jurisdiction to consider this matter, as Mr. Duckins filed a timely notice of appeal. See Ill. S. Ct. R. 606 (eff. July 1, 2017).

¶ 26    On appeal, Mr. Duckins contends that he was not proven guilty beyond a reasonable doubt of criminal sexual assault under counts VI and VII when there was insufficient evidence that he was A.H.'s family member pursuant to the statutory definition. He argues that the State failed to establish that he was A.H.'s stepfather or lived in the North Bell residence continuously for the

requisite six months prior to the alleged sexual contact. He, therefore, requests that his convictions be reduced to aggravated criminal sexual abuse and the cause remanded for resentencing.

¶ 27    In reviewing the sufficiency of the evidence, "the question is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. McLaurin*, 2020 IL 124563, ¶ 22 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The trier of fact is responsible for resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from the facts presented at trial. *Id.* When weighing the evidence, the trier of fact is not required to disregard inferences flowing naturally from the evidence before it or search out all possible explanations consistent with innocence and raise them to the level of reasonable doubt. See *In re Jonathon C.B.*, 2011 IL 107750, ¶ 60.

¶ 28    "In reviewing the evidence, this court will not retry the defendant, nor will we substitute our judgment for that of the trier of fact." *McLaurin*, 2020 IL 124563, ¶ 22. We reverse a conviction only when the evidence is so unreasonable, improbable, or unsatisfactory that it creates a reasonable doubt of a defendant's guilt. *People v. Newton*, 2018 IL 122958, ¶ 24.

¶ 29    To sustain convictions for criminal sexual assault as charged in the indictment, the State had to establish beyond a reasonable doubt that A.H. was under 18 years old, that Mr. Duckins was a family member, *i.e.*, her stepfather, and that he resided in the same household for at least six months when contact occurred between Mr. Duckins' penis and A.H.'s mouth (count VI) and Mr. Duckins' mouth and A.H.'s sex organ (count VII). 720 ILCS 5/11-1.20(a)(3) (West 2020).

¶ 30    A " 'Family member' " includes a stepparent and, "if the victim is a child under 18 years of age, an accused who has resided in the household with the child continuously for at least 6

months." See 720 ILCS 5/11-0.1 (West 2020). Here, Mr. Duckins only challenges whether, under the statute, he was A.H.'s family member at the time of the sexual contact.

¶ 31    At trial, A.H. testified that she was born on October 20, 1997, and that she was 10, 11, or 12 years old when Mr. Duckins moved into the North Bell residence. An.H. testified that she was born on July 17, 2000, and that she was 10 years old when Mr. Duckins moved into the North Bell residence. Mr. Duckins, for his part, testified that he moved into the residence in January 2011, and claimed that he was mistaken when he told police that he lived there for six years before his March 2016 arrest. Based on A.H.'s testimony, Mr. Duckins moved into the North Bell residence between October 20, 2007, and October 19, 2010. Based on An.H.'s testimony, Mr. Duckins moved in no later than July 16, 2011. Based on Mr. Duckins' testimony and prior statement, he moved in as early as March 2010, and as late as January 2011.

¶ 32    As to count VI for criminal sexual assault, which alleged contact between Mr. Duckins' penis and A.H.'s mouth, taking the evidence in the light most favorable to the State, there was sufficient evidence from which a rational trier of fact could conclude that Mr. Duckins continuously lived in the home for six months at the time of the sexual contact. A.H. testified that such conduct began when she was 13 years old. Mr. Duckins entered a stipulation that A.H. told a detective and an ASA that she was 15 when oral sex with him began. Under either of the dates elicited during Mr. Duckins' trial testimony as the date he moved into the North Bell residence, March 2010 or January 2011, the evidence established that he lived there for at least six months prior to A.H.'s fifteenth birthday on October 20, 2012.

¶ 33    Moreover, as to count VII for sexual assault, which alleged contact between Mr. Duckins' mouth and A.H.'s sex organ, taking the evidence in the light most favorable to the State, there was

sufficient evidence from which a rational trier of fact could conclude that Mr. Duckins continuously lived in the home for six months at the time of the sexual contact.

¶ 34    At trial, A.H. testified that when she was 12 or 13 years old, when the conduct alleged in count VII occurred. Mr. Duckins does not argue about the sufficiency of the evidence regarding the sexual conduct. Therefore, based on A.H.'s testimony, this incident occurred between October 20, 2009, and October 19, 2011, when A.H. was 12 or 13 years old. As noted, the evidence reflected that Mr. Duckins moved into the North Bell residence as early as October 2007. Thus, a reasonable trier of fact could have concluded that Mr. Duckins had lived in the North Bell residence continuously for six months at the time of contact between Mr. Duckins' mouth and A.H.'s sex organ.

¶ 35    Be that as it may, Mr. Duckins argues that his testimony established that he moved into the North Bell residence in January 2011 and that he was mistaken when he stated, during one conversation with police, that he had lived at the North Bell residence for six years at the time of his arrest in March 2016. Mr. Duckins also denied stating, in another conversation with police, that he lived with Green at the North Bell residence for approximately six years. It is the responsibility of the trier of fact to resolve conflicts in the testimony and weigh the evidence. See *People v. Bradford*, 2016 IL 118674, ¶ 12 ("It is the responsibility of the trier of fact to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from the facts."). Here, the court heard A.H., An.H., and Mr. Duckins testify as to when Mr. Duckins moved into the North Bell residence, and found Mr. Duckins' version of events incredible, as evidenced by its guilty findings. See *People v. Ortiz*, 196 Ill. 2d 236, 267 (2001) ("a fact finder need not accept the defendant's version of events as among competing versions"). "A trier of fact is not required to disregard the inferences that normally flow from the evidence or to seek out all possible

explanations consistent with a defendant's innocence and elevate them to reasonable doubt." *People v. Murphy*, 2017 IL App (1st) 142092, ¶ 11.

¶ 36 Accordingly, viewing the evidence in the light most favorable to the State, we cannot say that no rational trier of fact could have concluded that Mr. Duckins was A.H.'s family member as alleged in the indictment. We reverse a defendant's conviction only when the evidence is so unreasonable, improbable, or unsatisfactory that reasonable doubt of his guilt remains (*Newton*, 2018 IL 122958, ¶ 24); this is not one of those cases. Mr. Duckins' convictions for criminal sexual assault under counts VI and VII are therefore affirmed.

¶ 37                                CONCLUSION

¶ 38 For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 39 Affirmed.