NOTICE

Decision filed 08/31/22. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2022 IL App (5th) 210189-U

NO. 5-21-0189

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Edwards County. |
| | ) | |
| v. | ) | No. 19-CF-48 |
| | ) | |
| DENNIS M. BAILEY, | ) | Honorable |
| | ) | Michael J. Valentine, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE VAUGHAN delivered the judgment of the court.
Justices Welch and Wharton concurred in the judgment.

**ORDER**

¶ 1     *Held*: Where the evidence proved defendant guilty beyond a reasonable doubt, the trial court did not err in barring a defense witness, answering the jury's questions, or sentencing defendant. Nor was defendant prejudiced by the State's failure to correct arguably false testimony. As any argument to the contrary would lack merit, we grant defendant's appointed counsel on appeal leave to withdraw and affirm the judgment of the circuit court.

¶ 2     Defendant, Dennis M. Bailey, appeals his conviction and sentence for residential burglary. Defendant's appointed attorney on appeal, the Office of the State Appellate Defender (OSAD), concluded this appeal lacks merit. Accordingly, OSAD filed a motion to withdraw as counsel for defendant (see *Anders v. California*, 386 U.S. 738 (1967)) along with a brief in support of the motion. OSAD provided defendant with a copy of its *Anders* motion and brief. Defendant filed a

1

response. We agree with OSAD and conclude the instant appeal lacks merit. Accordingly, we grant OSAD leave to withdraw and affirm the circuit court's judgment.

¶ 3                                        BACKGROUND

¶ 4      Defendant was charged with residential burglary (720 ILCS 5/19-3(a) (West 2018)) in that he entered the dwelling of Edward and Candace Thacker with the intent to commit a theft therein, and theft (*id.* § 16-1(a)(1)) in that he knowingly obtained unauthorized control over certain property of Candace, and her son, Dustin Mann, having a total value of more than $500 but less than $10,000. At trial, the State presented testimony from five people including Candace, Edward, and Dustin. Their testimonies revealed the following.

¶ 5      Candace and Dustin knew defendant for seven years. Candace believed defendant was a friend and stated that he would stop to talk when he walked by. Dustin denied being friends with defendant but stated he saw him around regularly.

¶ 6      On October 8, 2019, Candace, Edward, and Dustin, left their home for Dustin's doctor appointment in Mt. Vernon. At that time, the doors were locked, and no one remained in the house. Upon their return, Edward realized someone was in the house. Candace went to the garage door located at the back of the house while Dustin went to the side of the house. Edward went inside the front door and, upon entering the house, saw defendant in the dining room. Defendant dropped a brown bag and took off running down the basement steps which led to the garage. The brown bag that defendant dropped in front of Edward contained vapes and knives.

¶ 7      As Candace was standing by the garage door, it opened, and defendant came out. Dustin also saw defendant come out of the garage. Candace called defendant by name, and he said, "Please don't call the police."

¶ 8     At this point, Edward was on the deck to the side of the house. Edward saw defendant again and told defendant that he was going to jail. Defendant pleaded with Edward not to call the police because he did not want to go to jail.

¶ 9     Candace could not find her cell phone, so she drove a short distance to the police station to report the incident. When she returned and went through the house, she found an open dresser drawer. In it was a sewing box where she kept money that Dustin collected from his rental properties. All of the money—approximately $700—was missing. She also noticed other items missing from the house.

¶ 10    Two days later, the family discovered a laundry basket, containing the other items Candace believed were missing, by the garage door. These items were not put by the garage door by Candace, Edward, or Dustin. The State admitted a picture of these items as an exhibit. In the end, the only thing missing from the home was the $700 from Candace's sewing box.

¶ 11    During cross-examination, defense counsel asked Dustin and Edward if they argue, specifically asking Edward if he and Dustin argued about defendant. Both men said they did not argue.

¶ 12    On the third and final day of trial, defense counsel disclosed Melissa Huff as a potential defense witness. The prosecutor objected due to the late disclosure. The court held a *voir dire* examination of Huff, in which both parties were allowed to question her. Huff testified that she heard Dustin and Edward arguing one day. Dustin said, "You know [defendant] didn't take that money. You're just hoping Kyle would pay it so [defendant] wouldn't get into trouble." Kyle was defendant's uncle. Huff admitted she did not know the context of their conversation. She also said that Dustin and Edward argued in public multiple times, and "Cops are always down there." The court refused Ms. Huff's testimony. The State and defense rested.

¶ 13   The court instructed the jury that:

"To sustain the charge of residential burglary, the State must prove the following propositions:

First proposition, that the defendant knowingly entered the dwelling place of another and, second proposition, that the defendant did so without authority and, third proposition, that the defendant did so with the intent to commit therein a theft.

\* \* \*

To sustain the charge of theft of property exceeding $500 in value, the State must prove the following propositions:

First proposition, that Candace Thacker and/or Dustin Mann were the owners of the property in question and, second proposition, that the defendant knowingly obtained unauthorized control over the property in question and, third proposition, that the defendant intended to deprive the owners, thereof, permanently of the use or benefit of that property and, fourth proposition, that the property in question exceeded $500 in value."

¶ 14   During deliberations, the jury sent a note with three questions related to "unauthorized control" of property. The first question stated, "Does 'obtained unauthorized control over the property' have location tied to it?" The second stated "if he didn't leave the property, does he have control over it?" The third requested "a more detailed explanation of proposition number two under theft." While the court was researching an answer, the jury sent another note asking, "Do the items left behind pictured in the exhibits figure into charge number two under theft?"

¶ 15   The court answered the first group of questions by stating, "The phrase 'obtains control' includes, but is not limited to, the taking of, carrying away of or possession of property." Illinois Pattern Jury Instructions, Criminal, No. 13.33D (4th ed. Supp. 2009) (hereinafter IPI). The court

4

responded to the second note, stating, "You have heard and received all the evidence and exhibits that were properly allowed by the Court and instructions applicable to the case. You must continue to deliberate based on this evidence, exhibits, and my instructions."

¶ 16　The jury found defendant guilty of residential burglary but not guilty of theft. At sentencing, the State established that defendant had prior convictions for escape and burglary and was thus eligible for a Class X sentence. See 730 ILCS 5/5-4.5-95 (West 2018). Defendant's criminal record also included convictions for theft, aggravated battery, possession of methamphetamine, and aggravated fleeing. He had pending charges for burglary, theft, and violating an order of protection as well.

¶ 17　Edward orally submitted a victim impact statement, speaking to the vulnerability the family now felt. Heather Turner, defendant's fiancée, then testified on behalf of the defense. She indicated defendant's actions were the result of his drug addiction, and she believed he would stay out of trouble if he was sober.

¶ 18　Defendant also testified. Defendant stated that his life took a turn for the worse when his grandfather—with whom he had been living—was incarcerated. He moved twice, his father died, and he began using meth and Dilaudid, a prescription pain medication, around the age of 12. He first attended rehab when he was around 14 or 15 years old. He made several attempts to remain sober but would always use again after a few months or so. Defendant was expelled from high school for having illegal prescription pills, and never returned, but obtained his GED while in rehab. Defendant averred that he now intended to obtain an associate's degree in business management while incarcerated so he could provide for his children once released. He opined that he could remain sober with proper treatment.

¶ 19　The court sentenced him to 12 years' imprisonment. Defendant timely appealed.

¶ 20                                    ANALYSIS

¶ 21    OSAD suggests seven issues defendant could possibly raise on appeal but concludes none of them has arguable merit. We agree.

¶ 22    The first potential issue is whether the trial court abused its discretion by barring Huff's testimony as a sanction for late disclosure. In deciding whether to exclude evidence as a discovery sanction, a trial court should consider the (1) effectiveness of a less severe sanction, (2) materiality of the proposed testimony, (3) prejudice to the other party caused by the testimony, and (4) evidence of bad faith in the violation of discovery rules. *People v. Tally*, 2014 IL App (5th) 120349, ¶ 29 (citing *People v. White*, 257 Ill. App. 3d 405, 414 (1993)). We review a trial court's imposition of a discovery sanction for an abuse of discretion. *People v. Ramsey*, 239 Ill. 2d 342, 429 (2010).

¶ 23    The proposed testimony here lacked material importance, as it did not directly relate to defendant's guilt or innocence but was relevant only for impeachment. Moreover, it appears relevant only to the theft charge, of which defendant was acquitted. Thus, even if the exclusion of the evidence was error, defendant was not prejudiced.

¶ 24    The second potential issue is whether the court erred in answering the jury's questions. When a jury poses an explicit question on a point of law, the court must provide an answer. *People v. Averett*, 237 Ill. 2d 1, 24 (2010). However, a court may use its discretion to decline answering a question that involves a question of fact, the instructions sufficiently explain the relevant law, or where answering could express the court's opinion likely to impact the verdict. *Id.*

¶ 25    The first set of questions posed by the jury sought clarification on the meaning of "obtaining unauthorized control." The legal definition of a phrase or word is a point of law. *People v. Gray*, 346 Ill. App. 3d 989, 993 (2004). As such, the court did not err in answering the jury's

6

first set of questions by providing the IPI criminal instruction for the phrase "obtaining control." See *People v. Hudson*, 222 Ill. 2d 392, 399-400 (2006) ("Supreme Court Rule 451(a) [citation] requires a trial court to instruct the jury pursuant to the IPI criminal instructions unless the trial court determines that the IPI instruction does not accurately state the law.").

¶ 26    The jury's second question did not seek clarification absent from the given instructions. As the parties agreed, the instructions provided by the court in this respect accurately explained the law. Further, a more explicit answer from the trial court could have influenced the jury and potentially directed a verdict. The court therefore did not err by declining to answer the second question.

¶ 27    We also note that the jury's questions related solely to the theft charge and the jury acquitted defendant on that charge. As such, even if the response was erroneous, defendant could not prove prejudice regarding the court's responses to the jury's questions.

¶ 28    The third potential issue is whether defendant's due-process rights were violated when the State failed to correct Dustin's and Edward's testimonies that they did not argue. The State's knowing use of perjured testimony to obtain a conviction violates due process. *People v. Jimerson*, 166 Ill. 2d 211, 223 (1995). Such a conviction "must be set aside if there is any reasonable likelihood that the false testimony could have affected the jury's verdict." *People v. Olinger*, 176 Ill. 2d 326, 345 (1997) (citing *United States v. Bagley*, 473 U.S. 667, 678-80 (1985)). These same principles apply "where the State, although not soliciting the false testimony, allows it to go uncorrected when it appears." *Id.*

¶ 29    Here, it is not clear that the testimony is false. It is demonstrably false only if we assume the truth of Huff's *voir dire* testimony that she frequently heard Dustin and Edward arguing. Regardless, there is no reasonable probability that the testimony contributed to the verdict as the

7

testimony did not directly relate to defendant's guilt or innocence and correcting it would at most have impeached two witnesses on a collateral point.

¶ 30   The fourth possible issue is whether the court erred in sentencing defendant as a Class X offender.

> "When a defendant, over the age of 21 years, is convicted of a Class 1 or Class 2 felony *** after having twice been convicted in any state or federal court of *** a Class 2 or greater Class felony, *** and those charges are separately brought and tried and arise out of different series of acts, that defendant shall be sentenced as a Class X offender." 730 ILCS 5/5-4.5-95(b) (West 2018).

¶ 31   To support its contention that defendant was eligible for Class X sentencing, the State tendered certified copies of defendant's 2008 conviction in Wabash County of escape from a penal institution and his 2014 conviction in Edwards County of burglary, both of which were Class 2 felonies. 720 ILCS 5/31-6(a) (West 2008); 720 ILCS 5/19-1(b) (West 2014). In this case, defendant was over the age of 21 and convicted of residential burglary, a Class 1 felony. 720 ILCS 5/19-3(b) (West 2018). The defense agreed that defendant was eligible for Class X sentencing on this basis. The trial court therefore did not err in sentencing defendant as a Class X offender.

¶ 32   The fifth potential issue is whether the sentence was an abuse of discretion. We will not disturb a sentence within the applicable range unless the trial court abused its discretion. *People v. Stacey*, 193 Ill. 2d 203, 209-10 (2000). An abuse of discretion occurs only where a sentence varies greatly from the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense. *Id.* at 210. "It is the province of the trial court to balance relevant factors and make a reasoned decision as to the appropriate punishment in each case." *People v. Latona*, 184 Ill. 2d

8

260, 272 (1998). We may not substitute our judgment for the trial court's merely because we might weigh those factors differently. *Stacey*, 193 Ill. 2d at 209.

¶ 33    Here, in addition to the escape and burglary convictions, defendant was previously convicted of theft, aggravated battery, possession of methamphetamine, aggravated fleeing, and driving under the influence of alcohol. At the time of sentencing, he had three other pending charges and was previously incarcerated four times. His sentence of 12 years' imprisonment was below the midpoint of the 6-to-30-year range for a Class X felony. 730 ILCS 5/5-4.5-25(a) (West 2018). Under these circumstances, the sentence was not an abuse of discretion.

¶ 34    The sixth possible issue is whether trial counsel provided ineffective assistance by failing to file a posttrial motion. The sixth amendment guarantees a defendant the right to effective assistance of counsel. *People v. Rogers*, 2021 IL 126163, ¶ 23. Defense counsel provides ineffective assistance when his or her representation falls below an objective standard of reasonableness, and those deficiencies undermine confidence in the outcome of the proceedings or deprive the defendant of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687-89 (1984). "Where there are no substantial grounds for a new trial, a failure to move for one cannot demonstrate incompetency." *People v. Purnell*, 126 Ill. App. 3d 608, 624 (1984). As our disposition of this appeal demonstrates, no substantial grounds for a new trial exist. Accordingly, defendant has not shown incompetent representation or the prejudice necessary to establish ineffective assistance of counsel.

¶ 35    The final suggested issue is whether the State proved defendant was guilty beyond a reasonable doubt of residential burglary. "When faced with a challenge to the sufficiency of the evidence," "the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime

9

beyond a reasonable doubt." *People v. Campbell*, 146 Ill. 2d 363, 374 (1992). It is not the reviewing court's function to retry the defendant, nor should it substitute its own judgment for that of the trier of fact regarding witness credibility or the weight of the evidence. *People v. Muffick*, 2019 IL App (5th) 160388, ¶ 8. "A criminal conviction will not be set aside on a challenge to the sufficiency of the evidence unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt." *People v. Jackson*, 2020 IL 124112, ¶ 64. We draw all reasonable inferences in the State's favor. *People v. Vanhoose*, 2020 IL App (5th) 170247, ¶ 25.

¶ 36    A defendant commits residential burglary when he or she knowingly and without authority enters another's dwelling place with the intent to commit a felony or a theft. 720 ILCS 5/19-3(a) (West 2018); *People v. Wilson*, 155 Ill. 2d 374, 376 (1993). "Intent is usually proven through circumstantial evidence, that is, inferences based upon defendant's conduct." *People v. Murphy*, 2017 IL App (1st) 142092, ¶ 10. Absent other reasonable explanation, unlawful entry to a residence "indicates theft as the most likely purpose." *People v. Johnson*, 28 Ill. 2d 441, 443 (1963).

¶ 37    Here, not only did three witnesses testify to finding defendant in their home without permission, Edward also testified that he saw defendant drop a bag containing personal property from the house when he confronted defendant. The family also discovered additional personal property—that was originally elsewhere in the house—in a basket by the garage door. It is of no consequence that the jury ultimately found defendant innocent of theft, as burglary requires only that defendant unlawfully enters the residence with the intent to commit a theft and can occur regardless of whether a theft was completed. See *Murphy*, 2017 IL App (1st) 142092, ¶ 10. This evidence, which was uncontradicted, was sufficient to support defendant's burglary conviction.

10

¶ 38        CONCLUSION

¶ 39    For the foregoing reasons, we grant OSAD's *Anders* motion and affirm the judgment of the circuit court.


¶ 40    Motion granted; judgment affirmed.