2023 IL App (3d) 210181

Opinion filed July 19, 2023

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-21-0181 Circuit No. 18-CF-601 |
| DARRIUS D. BROWN, | ) ) ) | The Honorable Carmen J. Goodman, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE McDADE delivered the judgment of the court, with opinion.
Presiding Justice Holdridge and Justice Brennan concurred in the judgment and opinion.

**OPINION**

¶ 1     The defendant, Darrius D. Brown, was convicted of aggravated domestic battery (720 ILCS 5/12-3.3 (West 2018)), unlawful use of a weapon by a felon (*id.* § 24-1.1(a), (e)), and resisting a peace officer (*id.* § 31-1(a)). The circuit court sentenced him to concurrent terms of 8 years of imprisonment, 6 years of imprisonment, and 100 days in jail, respectively. On appeal, Brown argues that (1) trial counsel rendered ineffective assistance for failing to file a motion to dismiss or adopt Brown's *pro se* motion to dismiss for a speedy-trial violation, (2) the court erred when it denied his two pretrial requests to proceed *pro se*, (3) the court failed to properly

admonish him under Illinois Supreme Court Rule 401 (eff. July 1, 1984) when he waived his

right to counsel after trial, and (4) the court erred when it failed to follow proper procedures

under *People v. Krankel*, 102 Ill. 2d 181 (1984). We affirm.

¶ 2                                    I. BACKGROUND

¶ 3          On March 23, 2018, the State charged Brown with unlawful use of a weapon by a felon

(720 ILCS 5/24-1.1(a), (e) (West 2018)), aggravated domestic battery (*id.* § 12-3.3), aggravated

battery (*id.* § 12-3.05(f)(1), (h)), intimidation (*id.* § 12-6(a)(1)), and unlawful restraint (*id.* § 10-

3(a), (b)). Brown was taken into custody on March 24, 2018.

¶ 4          A superseding indictment was filed on April 18, 2018, containing two counts of

aggravated battery, two counts of aggravated domestic battery, one count of unlawful restraint,

one count of intimidation, two counts of unlawful use of a weapon by a felon, one count of

domestic battery (*id.* § 12-3.2(a)(2), (b)), and one count of resisting a peace officer (*id.* § 31-

1(a)).

¶ 5          Certain developments during pretrial matters are relevant to this appeal, including some

of the many continuances entered in the case. At a pretrial conference on May 30, 2018,

substitute defense counsel asked for a continuance. Brown interjected, stating that he did not

agree to a continuance. He further stated, "I want a faster speedy trial. I would like to proceed

*pro se*." The circuit court responded:

> "Sir, I am not allowing you to proceed *pro se*, certainly based on
>
> your statements this morning that you would like to proceed with a trial
>
> date as quickly as possible. I don't have any problems at all with setting
>
> the case for trial, but [defense counsel] needs to be here and I need to hear

from him. He is your counsel. You have many counts in your case that I reviewed. You need to be sure that you're represented.

So, I am going to grant the defense request, because [defense counsel] was here earlier."

The case was continued to June 8.

¶ 6    On June 19, trial counsel filed a motion to withdraw, stating that Brown did not want to be represented by the public defender's office and wanted to proceed *pro se*. In court on June 22, trial counsel stated that "I have had further discussions with Mr. Brown since I filed that motion [to withdraw]. I would make a motion to withdraw my motion to withdraw." Trial counsel then asked for a continuance to review the State's additional discovery. The case was continued at trial counsel's request.

¶ 7    Over one year later, on August 13, 2019, the State charged Brown in a separate matter with intimidation. On August 29, the State elected to go to trial first on this new charge. During the trial on that charge on January 10, 2020, the circuit court granted Brown's motion for a directed verdict and found him not guilty of the new intimidation charge.

¶ 8    On February 27, 2020, trial counsel requested a continuance because the State had filed a motion to admit prior bad acts and tendered significant amounts of discovery the week prior, then tendered more discovery that morning. He also noted that Brown had been in court but that he had been removed after getting upset when trial counsel told him that they were not ready for trial. Trial counsel then asked for a continuance until March 19, but the court refused to allow it because Brown had to be present to assert his speedy-trial right if he so desired. The court also emphasized that Brown needed to understand the impact of a speedy-trial demand in relation to the new discovery tendered by the State:

"He needs to understand that you got a lot of information there. Once you give it and once you say speedy trial, then basically what you're doing is letting all of that information that you have not fully reviewed come in. See, that's the fear. Because you're saying it's complete too, not just the State."

¶ 9        On March 2, 2020, the circuit court noted that Brown had been charged with several counts stemming from a separate incident and that he had not yet been arraigned on those new charges. The court set the new charges for preliminary determination on March 19. Turning back to the instant case, the court first admonished Brown regarding his prior disruptive behavior and stated that, if it happened again, he could be tried without his presence. Trial counsel asked for a continuance, and Brown objected. The court then explained the situation to Brown, including that the State's motion to admit prior bad acts was customary in domestic-related cases and that going to trial immediately without representation would result in waiving any objection to the additional discovery tendered by the State.

¶ 10        After further discussion, Brown complained that trial counsel never ordered him clothes for trial and that "[h]e never intended on taking me to trial." Brown then said that he wanted to represent himself and proceed to trial. The court told him he was not ready and that the trial would not begin that day. When the court asked trial counsel to proceed with his motion to continue, Brown stated that he did not want trial counsel to represent him. The court told Brown to put his request in writing, "say why, and we can go through the admonishments because that's a whole 'nother tap dance." The court then granted trial counsel's motion to continue.

4

¶ 11　　　　The circuit court held a status hearing on March 26, 2020, regarding the new charges filed against Brown. Brown's instant case was also discussed; during those discussions, Brown stated, "I want to keep my lawyer on that case."

¶ 12　　　　On April 27, 2020, the circuit court held a status hearing. The State had filed a motion to compel discovery that day, and the case was set for status on May 18. The court noted that speedy-trial periods were suspended and added that "[h]opefully at that point we'll be off the lockdown." However, the court corrected itself and noted that "[n]othing is going to return to normal until June 1." The court then asked the prosecutor to take a date in June instead, and the prosecutor responded that she would agree to any date past May 18 that trial counsel would prefer. Brown then stated, "I'm not agreeing to anything," so the court said that the May 18 date would stand. It then attributed the delay to the State. When the prosecutor asked for clarification that the continuance was due to the supreme court's order, the court stated, "I'm not making any further findings, May 18th. That's the date you get. Figure it out."

¶ 13　　　　At the May 18 hearing, Brown requested a continuance so he could speak to his attorney, whom Brown claimed he had not spoken with in three months. Accordingly, the court continued the case to June 2. On that date, the case was continued until July 7 pursuant to a request by trial counsel.

¶ 14　　　　On July 16, Brown filed a *pro se* motion to dismiss based on a speedy-trial violation. On August 19, trial counsel informed the court that he was not adopting Brown's motion.

¶ 15　　　　The circuit court held a bench trial on the 10-count indictment on September 1 and October 1 and 8, 2020. The court granted the defense's motion for a directed verdict regarding seven counts. At the close of trial, the court found Brown guilty of aggravated domestic battery, unlawful use of a weapon by a felon, and resisting a peace officer.

¶ 16    On October 27, Brown filed a *pro se* motion for a new trial that alleged ineffective assistance of counsel. Brown's motions essentially alleged that trial counsel had failed to interview witnesses and failed to cross-examine others. In court on October 27, Brown's allegations were not addressed. Rather, trial counsel requested and was granted a continuance to review Brown's *pro se* motion and determine whether to file a motion for a new trial.

¶ 17    In court on November 9, 2020, trial counsel stated that a *Krankel* hearing was needed. The State agreed. While explaining the situation to Brown, the circuit court stated that it had not "looked at your motion other than [trial counsel] didn't ask the certain questions that you wanted them to ask." The court also noted "[t]hat's usually not a good basis" because such matters typically involved trial strategy. After mentioning that it had to admonish Brown about representing himself, the court explained that the fact that he had a public defender in his other pending case complicated matters. The court also stated,

> "if this is just a hearing, we can have somebody else other than [trial counsel], okay, the ones that represented you at trial. I can—you can have someone represent you on your motion. They may or may not adopt it from the Public Defender's office, only for the purposes of the hearing. Do you understand what I'm saying?"

Brown stated that he understood.

¶ 18    Next, the court asked Brown if he wanted to represent himself or if he wanted new counsel. Brown asked for new counsel so long as he or she was not "friends" with trial counsel. The court stated that it understood Brown's sentiment and ordered the appointment of another public defender.

6

¶ 19 A presentence investigation report was compiled on Brown on December 7. Notably, his criminal history included four felony convictions—being an armed habitual criminal in 2006, attempted armed robbery in 2003, arson in 2003, and manufacture/delivery of 1 to 15 grams of cocaine in 2000.

¶ 20 Brown filed an amended *pro se* motion for a new trial on December 17, which added some additional details regarding the claims he set forth in his prior motion. The case was continued twice in early 2021 so new counsel could discuss the case with Brown and investigate the matter further, including by ordering transcripts.

¶ 21 On March 2, 2021, new counsel filed a motion to withdraw due to a conflict of interest arising from prior counsel's upcoming appointment as the Will County public defender. Counsel was allowed to withdraw on March 10. Private counsel was appointed to Brown on March 19, and the case was continued to April 9.

¶ 22 In court on April 9, private counsel informed the court that he had spoken with Brown three days prior. Subsequently, he received an e-mail on behalf of Brown that he wanted to waive his right to counsel. Private counsel also stated that Brown wished to proceed *pro se* in all of his cases. The court then proceeded with admonishments, informing him that he was subject to Class X sentencing due to his criminal history and was facing 6 to 30 years of imprisonment in this case. Regarding Brown's other cases, the court informed him that he was facing 6 to 30 years of imprisonment in his other domestic-related case, which was also Class X sentencing but was not consecutive. Also, regarding his driving-under-the-influence case "and some traffic matters," the court informed Brown that he was facing one year in jail and $2500. The court then emphasized that "the most serious is the six to 30."

¶ 23        Pursuant to the court's questions, Brown stated that his education level included some college and that he had never tried a case before. The court also told Brown that he would be at a disadvantage because he was not an attorney and due to "the experience of the State's Attorneys and the weight of their whole office." Brown stated that he still wanted to represent himself and that the previously established date of May 3 for sentencing was acceptable.

¶ 24        On April 19, Brown filed another motion for a new trial, which contained additional details regarding the ineffective assistance claims he made previously. He also alleged that the State knowingly presented false testimony during his trial. Brown put it on the court's call for April 23, but he refused to come to court, so the court stated the May 3 date would stand.

¶ 25        On May 3, Brown argued his latest motion for a new trial. In accord with his motion, he argued that a certain witness—the victim's son—lied to police about seeing Brown punch the victim[1] and that trial counsel refused to impeach that witness with his statement to hospital staff that the victim's injuries were caused by a seizure. He also claimed that the radiologist lied at trial when he testified that the victim had 14 acute fractures; Brown claimed that the victim only had 2. Brown also commented on a doctor's expert testimony, but the court corrected him and stated that the doctor, in fact, testified that the victim's injuries could not have been caused by a seizure or one fall. Brown also complained that his son was not called to testify and trial counsel did not adequately cross-examine the victim. The court discussed with Brown that his allegations related to trial strategy. It then asked Brown if he wanted to call trial counsel to the stand, and Brown said yes. Brown asked trial counsel numerous questions regarding his claims, which mostly involved asking why he did not cross-examine certain witnesses in a particular fashion.

---

[1] Brown claimed that this statement had been suppressed.

¶ 26        At the close of the hearing, the court denied Brown's motion, and the case immediately proceeded to sentencing. After hearing arguments, the court sentenced Brown to 8 years of imprisonment for aggravated domestic battery, to be served concurrently with 6 years of imprisonment for unlawful use of a weapon by a felon and 100 days in jail for resisting a peace officer. Brown filed a notice of appeal the following day.

¶ 27                                II. ANALYSIS

¶ 28                               A. Speedy Trial

¶ 29        Brown's first argument on appeal is that trial counsel rendered ineffective assistance by (1) failing to file a motion to dismiss or adopt Brown's *pro se* motion to dismiss for a speedy trial violation and (2) agreeing to two particular continuances that tolled the speedy-trial clock.

¶ 30        To prove a claim of ineffective assistance of counsel, an individual must show (1) trial counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for trial counsel's deficient performance, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *People v. Albanese*, 104 Ill. 2d 504, 525 (1984). "The failure of counsel to argue a speedy-trial violation cannot satisfy either prong of *Strickland* where there is no lawful basis for arguing a speedy-trial violation." *People v. Cordell*, 223 Ill. 2d 380, 385 (2006). Thus, we must first determine if Brown's speedy-trial right was violated.

¶ 31        The parties agree that the 160-day speedy-trial period from section 103-5(e) of the Code of Criminal Procedure of 1963 (Code) applied to Brown in this case. 725 ILCS 5/103-5(e) (West 2018). The burden of proving a violation of the statutory right to a speedy trial rests with the defendant, who must show that (1) he was not tried within the statutory period and (2) he or she did not cause or contribute to any calculated delays. *People v. Staten*, 159 Ill. 2d 419, 426

9

(1994); see also 725 ILCS 5/103-5(f) (West 2018) (stating that "[d]elay occasioned by the defendant shall temporarily suspend for the time of the delay the period within which a person shall be tried"). "A defense counsel's express agreement to a continuance may be considered an affirmative act contributing to a delay which is attributable to the defendant." *People v. Kliner*, 185 Ill. 2d 81, 114 (1998). "[T]he provisions of section 103-5 are to be liberally construed in favor of the defendant, and *** the State cannot improperly manipulate criminal proceedings or purposefully evade the operation of the section's provisions." *People v. Van Schoyck*, 232 Ill. 2d 330, 335 (2009). We review a circuit court's factual determinations regarding who is responsible for the delay of a trial under the manifest weight of the evidence standard. *People v. Crane*, 195 Ill. 2d 42, 51 (2001) (citing *Kliner*, 185 Ill. 2d at 115).

¶ 32    In this case, Brown was taken into custody on March 24, 2018, and remained in custody throughout the case. He was charged with intimidation while he was in custody—a new charge that indisputably did not arise from the same situation that gave rise to the 10-count indictment— and the State tried him on that new charge first. It was resolved on January 10, 2020. He was then brought to trial on the 10-count indictment on September 1, 2020. Brown claims that either 228 or 249 days had elapsed from the date he was taken into custody until he was brought to trial on the 10-count indictment. The problem with Brown's calculation, however, is that he includes the time against the speedy-trial clock that accumulated *before* January 10, 2020, which he claims was 71 days. Brown's calculation evinces a misapprehension of section 103-5(e) of the Code.

¶ 33    The 160-day speedy-trial period mandated by section 103-5(e) on the pending charges begins *at the time of judgment* on the charge or charges upon which the State elected to proceed first. 725 ILCS 5/103-5(a) (West 2018). As was stated by the Fifth District,

"Section 103-5(e) requires the State to try the defendant, or obtain an adjudication of guilt after waiver of a trial, on at least one of the pending charges within 120 days from the date he was taken into custody. If the defendant is tried or adjudged guilty on one of the pending charges in a timely manner, section 103-5(e) accords the State an *additional* 160 days from the date judgment is entered on the first charge to try the remaining charges." (Emphasis added.) *People v. Raymer*, 2015 IL App (5th) 130255, ¶ 13.

Brown incorrectly believes that the 160-day period mandated by section 103-5(e) for the pending charges relates back to the original date he was taken into custody. In other words, he believes that, instead of 160 days, the State had 89 days from January 10, 2020, to bring him to trial on the 10-count indictment. His argument is contrary to the clear language of section 103-5(e). Thus, his claim about trial counsel's agreement to a continuance on May 30, 2018, is irrelevant to the resolution of this issue.

¶ 34        We note that the COVID-19 pandemic impacted the calculation of the speedy-trial period in this case and that multiple administrative orders of the supreme court and Will County circuit court were adopted affecting speedy-trial rights during the pandemic. Of relevance to this case, on April 7, 2020, our supreme court amended an administrative order to (1) authorize chief judges of each circuit to continue trials until further order of the supreme court, (2) exclude such continuances from speedy-trial computations contained in section 103-5, and (3) toll the statutory time restrictions contained in section 103-5 until further order. Ill. S. Ct., M.R. 30370 (eff. Apr. 7, 2020). Two days later, the Will County circuit court chief judge adopted an administrative order acknowledging the supreme court's amended administrative order and

11

authorizing all circuit and associate judges in Will County to continue criminal and juvenile cases. Will County Cir. Ct. A.O. 2020-12 (Apr. 9, 2020). The supreme court did not lift the toll on statutory time restrictions contained in section 103-5 until October 1, 2021. Ill. S. Ct., M.R. 30370 (eff. June 30, 2021).

¶ 35    Here, a total of 233 days elapsed from January 10, 2020, to the beginning of trial on September 1, 2020. Thus, to resolve Brown's speedy-trial violation allegation, we must look at the delays that occurred during that time period. If at least 73 of the 233 days that elapsed in this case were attributable to Brown or to the COVID-19 pandemic, then his speedy-trial claim is meritless.

¶ 36    Our review of the record reveals that at least 77 of those days did not count against the speedy-trial clock. First, while the circuit court attributed the delay between April 27 and May 18, 2020, to the State, the record is clear that this continuance was necessitated by the COVID-19 pandemic. Thus, the court abused its discretion when it attributed the delay to the State. Pursuant to the administrative orders entered by the supreme court and the circuit court, that delay of 21 days did not count against the speedy-trial clock.

¶ 37    Second, the parties also do not dispute that the delay between May 18 and June 7 was attributable to Brown because he requested the continuance himself. Thus, those 50 days did not count against the speedy-trial clock.

¶ 38    Third, the continuance from August 13 and 19 was due in part to one of the State's witnesses having COVID-19. Thus, pursuant to the administrative orders entered by the supreme court and the circuit court, that delay of six days did not count against the speedy-trial clock.

¶ 39    The aforementioned three delays, totaling 77 days, did not count against the speedy-trial clock. Thus, it is indisputable that Brown was brought to trial on the 10-count indictment before

12

160 days had elapsed from the adjudication on his intimidation charge, and we need not resolve the portion of his argument alleging ineffective assistance related to trial counsel agreeing to a continuance on March 2, 2020. Further, because no speedy-trial violation occurred, trial counsel did not render ineffective assistance for failing to file a motion to dismiss or to adopt Brown's *pro se* motion to dismiss for a speedy-trial violation.

¶ 40                                     B. Self-Representation

¶ 41         Brown's second argument on appeal is that the circuit court erred when it denied his two pretrial requests to proceed *pro se*. Without explanation, Brown claims he preserved this error for appellate review. He is incorrect, as he did not raise the issue in a posttrial motion. See *People v. Belknap*, 2014 IL 117094, ¶ 66. Alternatively, he requests plain-error review.

¶ 42         Under the plain-error doctrine, forfeited errors can be reviewed on appeal if

> "(1) a clear or obvious error occurs and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurs and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007).

The first step is to determine whether error occurred. *Id.*

¶ 43         Under the sixth and fourteenth amendments (U.S. Const., amends. VI, XIV), a defendant has a right to self-representation. *People v. Burton*, 184 Ill. 2d 1, 21 (1998). To represent himself, the defendant must knowingly and intelligently waive his right to counsel. *Id.* That waiver must be clear and unequivocal. *Id.*

13

¶ 44    In both his recitation of the law concerning a defendant's constitutional right to self-representation and his application of that law to his circumstances, Brown fails to acknowledge well-settled case law holding that a defendant's actions subsequent to a request to proceed *pro se* can be significant to the analysis. Our supreme court has held that

"Even if a defendant gives some indication that he wants to proceed *pro se*, he may later acquiesce in representation by counsel. Under certain circumstances, defendant may acquiesce by vacillating or abandoning an earlier request to proceed *pro se*. [Citations.] In determining whether a defendant seeks to relinquish counsel, courts may look at the defendant's conduct following the defendant's request to represent himself. [Citations.] A defendant may forfeit self-representation by remaining silent at critical junctures of the proceedings. [Citation.]" *Id.* at 23-24.

¶ 45    Here, Brown's attempts to convince this court that his requests to proceed *pro se* on May 30, 2018, and March 2, 2020, were clear and unequivocal are inconsequential. Regarding his May 30, 2018, request, Brown fails to acknowledge the significance of his conduct just weeks later before anything else occurred with his case. On June 19, trial counsel filed a motion to withdraw, stating that Brown had requested to proceed *pro se*. Three days later, trial counsel withdrew his motion because "I have had further discussions with Mr. Brown since I filed that motion [to withdraw]." Clearly, after those discussions, Brown reconsidered his request to proceed *pro se* and instead chose to proceed with counsel. Brown's acquiescence to representation shows that no error occurred regarding his May 30, 2018, request to proceed *pro se*.

14

¶ 46    Regarding Brown's March 2, 2020, request, subsequent developments again showed that he acquiesced to representation by counsel. At his next court appearance on March 26, Brown clearly told the court that he wanted to keep his attorney in the instant 10-count indictment case. Accordingly, no error occurred regarding his March 2, 2020, request to proceed *pro se*.

¶ 47    Because no error occurred regarding either request, we hold Brown to the forfeiture of his argument. See *Piatkowski*, 225 Ill. 2d at 565.

¶ 48                              C. Rule 401 Admonishments

¶ 49    Brown's third argument is that the circuit court failed to properly admonish him under Illinois Supreme Court Rule 401 (eff. July 1, 1984) when he waived his right to counsel after trial. Once again, Brown claims without explanation that he preserved this error for appellate review. Once again, he is incorrect, as he did not include the issue in a posttrial motion. See *Belknap*, 2014 IL 117094, ¶ 66. Alternatively, he requests plain-error review.

¶ 50    As previously noted, the first step under the plain-error doctrine is to determine whether error occurred. *Piatkowski*, 225 Ill. 2d at 565.

¶ 51    Illinois Supreme Court Rule 401(a) (eff. July 1, 1984) addresses waivers of counsel:

> "Any waiver of counsel shall be in open court. The court shall not permit a waiver of counsel by a person accused of an offense punishable by imprisonment without first, by addressing the defendant personally in open court, informing him of and determining that he understands the following:
>
>> (1) the nature of the charge;
>>
>> (2) the minimum and maximum sentence prescribed by law, including, when applicable, the penalty to which the defendant may be subjected because of prior convictions or consecutive sentences; and

15

(3) that he has a right to counsel and, if he is indigent, to have

counsel appointed for him by the court."

Strict compliance with Rule 401(a) is not required. *People v. Haynes*, 174 Ill. 2d 204, 236 (1996). "[S]ubstantial compliance will be sufficient to effectuate a valid waiver if the record indicates that the waiver was made knowingly and voluntarily, and the admonishment the defendant received did not prejudice his rights." *Id.* "Substantial compliance means a deficiency in the admonishments does not prejudice the defendant, either because the defendant already knows of the omitted information or because the defendant's degree of legal sophistication makes evident his or her awareness of the omitted information." *People v. Moore*, 2014 IL App (1st) 112592, ¶ 38. Whether a defendant has validly waived his right to counsel depends on the specific circumstances of the case. *People v. Redmond*, 2018 IL App (1st) 151188, ¶ 17.

¶ 52　　At the time the circuit court admonished Brown, he had been convicted of aggravated domestic battery, unlawful use of a weapon by a felon, and resisting a peace officer. The court did inform Brown of the nature of his aggravated domestic battery conviction, as well as its minimum and maximum sentencing range. However, the court did not inform him of anything related to his other two less serious convictions. In addition, the court did not inform Brown of the possibility of consecutive sentencing or that he had a right to counsel or appointed counsel. Thus, the court's admonishment was inadequate under Illinois Supreme Court Rule 401(a) (eff. July 1, 1984).

¶ 53　　"[W]hether reversal is required for an imperfect admonishment depends on whether real justice has been denied or whether the defendant has been prejudiced by the inadequate admonishment." *People v. Fuller*, 205 Ill. 2d 308, 323 (2002). In making this assessment, a court

16

"may consider the entire record in order to determine whether the defendant understood the nature of the charges against him." *Id.*

¶ 54   Our review of the record reveals that Brown was neither denied real justice nor prejudiced by the inadequate admonishment. First, Brown had just been through an entire trial on the 10-count indictment during which he was represented by an experienced attorney; this was not a situation in which his request to proceed *pro se* was granted before trial. Second, Brown was not an unsophisticated defendant; his criminal history included four felony convictions. He also showed he understood his right to counsel at several points during the life of this case, including when he specifically asked for counsel to be appointed for him on November 9, 2020. Third, he was informed of the sentencing range on his most serious conviction, which covered the sentencing range he would face on concurrent sentences. Fourth, while the circuit court did not inform Brown of the possibility of consecutive sentencing, he did not receive consecutive sentences.

¶ 55   In fact, Brown's sole attempt at arguing how he was impacted by the inadequate admonishment appears in just one sentence in his brief: "The court's action was prejudicial to [Brown], considering that *Krankel* counsel was allowed to withdraw, and [Brown] ultimately represented himself at his *Krankel* hearing when the court should have instead appointed new counsel to represent him at that hearing ***." Brown appears to be arguing that he was prejudiced because, had he received the entirety of the Rule 401 admonishment, he would not have sought to proceed *pro se* at his *Krankel* hearing. Brown's argument is purely speculative and not at all persuasive. Under the circumstances of this case, we hold that the record reflects the circuit court substantially complied with Rule 401 and that Brown knowingly and intelligently waived his right to counsel.

17

¶ 56                                            D. *Krankel* Hearing

¶ 57            Brown's fourth argument is that the circuit court erred when it failed to follow proper

*Krankel* procedures regarding his *pro se* motions for a new trial based on ineffective assistance

of counsel.

¶ 58            "*Krankel* serves the narrow purpose of allowing the trial court to decide whether to

appoint independent counsel to argue a defendant's *pro se* posttrial ineffective assistance

claims." *People v. Patrick*, 2011 IL 111666, ¶ 39.

> "New counsel is not automatically required in every case in which a
>
> defendant presents a *pro se* posttrial motion alleging ineffective assistance
>
> of counsel. Rather, when a defendant presents a *pro se* posttrial claim of
>
> ineffective assistance of counsel, the trial court should first examine the
>
> factual basis of the defendant's claim. If the trial court determines that the
>
> claim lacks merit or pertains only to matters of trial strategy, then the court
>
> need not appoint new counsel and may deny the *pro se* motion. However,
>
> if the allegations show possible neglect of the case, new counsel should be
>
> appointed." *People v. Moore*, 207 Ill. 2d 68, 77-78 (2003).

During the inquiry, "some interchange between the trial court and trial counsel regarding the

facts and circumstances surrounding the allegedly ineffective representation is permissible and

usually necessary." *Id.* at 78. "A brief discussion between the trial court and the defendant may

be sufficient." *Id.* In addition, the court may base its decision on the facial sufficiency of the

claims and its knowledge of how defense counsel performed at trial. *Id.* at 79.

¶ 59            Brown's argument on this issue has two parts. First, he claims that the circuit court

should have conducted a *Krankel* preliminary determination before May 3, 2021, and the failure

to do so requires a remand. Second, he claims that the circuit court erred by not appointing new counsel for the May 3, 2021, hearing and allowing Brown to represent himself at that hearing. These arguments are without merit.

¶ 60    "A trial court's failure to appoint new counsel to argue a defendant's *pro se* motion claiming ineffective assistance of counsel can be harmless beyond a reasonable doubt." *Id.* at 80. In this case, even if Brown is correct that the circuit court failed to conduct a proper *Krankel* inquiry, the fact remains that the court *did* appoint new counsel for him. It cannot seriously be argued that actually appointing new counsel somehow prejudiced Brown. Further, to the extent that Brown argues new counsel was unable to investigate matters related to the ineffective-assistance claims and that the court should have appointed counsel anyway, Brown created the problem himself by requesting counsel to withdraw so he could proceed *pro se*. See, *e.g.*, *People v. Carter*, 208 Ill. 2d 309, 319 (2003) (holding that "[u]nder the doctrine of invited error, an accused may not request to proceed in one manner and then later contend on appeal that the course of action was in error"). Under the circumstances of this case, including the fact that the circuit court substantially complied with Rule 401 when private counsel sought to withdraw at Brown's request, we hold that the record demonstrates the meritless nature of Brown's *Krankel*-based argument. See, *e.g.*, *People v. Nitz*, 143 Ill. 2d 82, 135 (1991) (holding that the record demonstrated the meritless nature of the defendant's *Krankel* argument and that the circuit court failure to appoint new counsel was harmless beyond a reasonable doubt).

¶ 61                                III. CONCLUSION

¶ 62    The judgment of the circuit court of Will County is affirmed.

¶ 63    Affirmed.

19

*People v. Brown*, 2023 IL App (3d) 210181

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Will County, No. 18-CF-601; the Hon. Carmen J. Goodman, Judge, presiding. |
| **Attorneys for Appellant:** | Leah Patton, of Ames, Iowa, for appellant. |
| **Attorneys for Appellee:** | James W. Glasgow, State's Attorney, of Joliet (Patrick Delfino, Thomas D. Arado, and Korin I. Navarro, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |